**Daniel Alan BOONE, Appellant,**

v.

**Angelyn Ray GIPSON, Appellee.**

No. S–6985.

Supreme Court of Alaska.

June 28, 1996.

William T. Ford, Anchorage, for Appellant.

Janet D. Platt, Anchorage, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and SHORTELL, Justice Pro Tem.*

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

This appeal involves a dispute concerning child support payments. Appellant Daniel Boone argues that the superior court erred in granting Appellee Angelyn Gipson's motion for reconsideration without first affording him an opportunity to respond, and that the superior court erroneously awarded a retroactive modification of child support.

### II. FACTS AND PROCEEDINGS

Daniel Boone and Angelyn Ray Gipson married in 1974. Their only child, Eryn Angelyn Boone, was born on November 4, 1978. Boone and Gipson were divorced in 1981. The 1981 Decree of Dissolution of Marriage provided that they would have joint custody of Eryn; it made no provision for

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

child support payments. Several months later, Eryn began living full time with her mother, but visited with Boone periodically. Boone and Gipson agreed to this arrangement verbally, and also agreed that Boone would pay $200 monthly for child support. Some time after the divorce, Boone and Gipson entered into new relationships and subsequently both remarried. Boone moved to California in 1987 to attend law school. He graduated in June 1990, at which time he began work as an attorney. Boone is now a California resident.

On February 24, 1992, Gipson filed a "Request for Review of Judicial Support Order" with the Alaska Child Support Enforcement Division (CSED). On February 26, 1992, CSED sent a Notice of Review of Support Order and a Child Support Guidelines affidavit to Boone. On March 24, 1992, CSED sent a letter to Boone asking him to submit financial information such as his most recent tax return. On April 23, 1992, Gipson filled out a form titled "Affidavit in Support for Motion for Child Support." In the affidavit, Gipson stated in part:

> [Boone] has been paying me $200.00 per month. He indicated he would help out more after he finished law school. Although he has now been out of school approx. two years, he has not offered any additional assistance. He had also told me he would pay his share of medical/dental bills incured [sic] over the last 7–8 years; but he hasn't. I feel my only alternative is to have a child support order issued.

At the time, no motion for child support was filed with the affidavit.

Over a year later, on September 7, 1993, CSED submitted to the superior court a Motion and Supporting Memorandum requesting that Boone submit his 1992 tax return and an affidavit to CSED. Gipson's 1992 affidavit was attached to the motion. The motion was apparently sent to Boone on September 7, 1993, with a note advising him that any response must be filed with the superior court within fifteen days of when the motion was served upon him.

On February 24, 1994, the superior court ordered that Boone submit his 1992 tax returns, an affidavit, and other financial information "within 15 days of the date of this order." The superior court further stated that if Boone failed to comply with the order, the court would enter a support order of $1,000 per month, effective April 1, 1992.[1] The order was not mailed until March 7, at which point the time period for Boone to respond had almost expired. Boone claims that the time for him to reply had completely expired when the order reached him in California. A CSED employee submitted an affidavit stating that no information had been received from Boone as of April 5, 1994. Sometime thereafter, Boone contacted CSED and supplied his 1993 tax return. On August 29, 1994, CSED filed a "Notice of Proposed Adjustment in Child Support" in the superior court stating that Boone should pay $817 per month, based on his 1993 income of $66,500.

On October 7, 1994, CSED mailed to Boone a "Notice of Motion and Motion to Modify Child Support." Boone filed his Opposition and an Affidavit on October 31, 1994. In his affidavit, Boone stated that he had approximately $30,000 of student loans to pay, and that two children in the household (a daughter of his new wife from a previous marriage and a child which Boone and his new wife had together) required substantial medical, psychological, and legal expenses that cost Boone large amounts of money. Gipson filed a reply memorandum on December 5, 1994. In an attached affidavit, Gipson stated that she experienced substantial financial hardship while Boone was in law school, but that she did not pressure him for increased payments during that time because she assumed that he, too, was under financial pressure at the time. However, she stated that she expected him to pay more child support following his attainment of employment as an attorney. Additionally, she claims that Boone did not pay the health and dental expenses which he was required to pay under the Decree of Dissolution.

On January 12, 1995, the superior court granted the Motion to Modify Child Support, and required Boone to pay $817 per month

---

1. This order was entered by Judge Andrews.

beginning on January 1, 1995. On January 19, 1995, Boone filed a Motion for Reconsideration asking the court to reduce the child support from the $817 per month that the court had ordered. On January 23, 1995, Gipson filed a Motion for Reconsideration arguing that the commencement date for the child support increase should be April 1, 1992. On February 16, 1995, the superior court granted Gipson's Motion for Reconsideration, ordering that the increased child support payment would be effective as of April 1, 1992. The court also granted Gipson $1,500 of her attorney's fees and costs. The superior court denied Boone's motion for reconsideration. Boone then filed this appeal.

## III. *STANDARD OF REVIEW*

■ In interpreting a statute or rule, this court will adopt the rule of law which is most persuasive in light of precedent, reason, and policy. *M.R.S. v. State,* 897 P.2d 63, 66 (Alaska 1995). Therefore, we review interpretations of statutes and rules on a de novo basis. Furthermore, a child support award will not be overturned unless the trial court has abused its discretion. *Richmond v. Richmond,* 779 P.2d 1211, 1216 (Alaska 1989); *Coghill v. Coghill,* 836 P.2d 921, 924 n. 1 (Alaska 1992).

## IV. *DISCUSSION*

Boone raises two arguments on this appeal. First, he argues that the superior court abused its discretion by granting Gipson's motion for reconsideration, since the court did not allow Boone an opportunity to respond. Second, Boone argues that the superior court lacked the authority to award child support retroactive to April 1, 1992.

A. *Did the Superior Court Abuse Its Discretion by Granting Gipson's Motion for Reconsideration without Affording Boone an Opportunity to Respond?*

■ The superior court articulated several reasons for granting Gipson's motion for reconsideration to make Boone's child support obligation retroactive to April 1, 1992. Specifically, the court stated that Boone had failed to respond to Judge Andrews' February 24, 1994, order requiring Boone to sub-

mit relevant financial information by March 11, 1994, and noted that Judge Andrews' order had provided, "If the obligor fails to submit the information as required by this order ... the court shall enter a support order of $1,000 per month effective April 1, 1992...." The superior court also observed that when Boone did provide financial information, "it was inaccurate and outdated."

Boone argues that had he been given an opportunity to respond, he would have pointed out that he received the February, 1994, order too late to respond to it in time, and that he provided his most current tax returns when he did subsequently respond to CSED. Gipson does not dispute that Boone received the February order too late to comply with its terms, but she points out that Boone still had not complied with the order even as of April 5, 1994. In light of this, and of what she claims was the superior court's awareness of Boone's actions during the pendency of the case, Gipson argues that the superior court did not abuse its discretion by failing to request a response from Boone before granting her motion for reconsideration.

Resolution of this issue depends on the interpretation of Civil Rule 77(k)(3). This rule states:

No response shall be made to a motion for reconsideration unless requested by the court, *but a motion for reconsideration will ordinarily not be granted in the absence of such a request.*

(Emphasis added.)

This is the first occasion we have had to interpret Civil Rule 77(k)(3). Based on the plain meaning of Civil Rule 77(k)(3), a trial court should ordinarily not grant a motion for reconsideration without first requesting a response from the nonmoving party. Therefore we hold that in the absence of an explanation of a compelling reason for it not to request a response, the superior court abused its discretion in granting Gipson's motion for reconsideration without affording Boone an opportunity to respond. Thus we vacate the superior court's order granting Gipson's motion for reconsideration and remand with directions to afford Boone the

opportunity to respond before again ruling on Gipson's motion for reconsideration.

### B. Did the Superior Court Err in Ordering Boone to Pay Child Support as of April 1, 1992?

■ Boone argues that the superior court erred by ordering him to pay the increased child-support payments as of April 1, 1992. Specifically, Boone argues that the superior court lacked authority to award the child support retroactively, and that therefore the superior court's order granting Gipson's motion for reconsideration should be set aside.

Resolution of this issue turns on the interpretation of former Civil Rule 90.3(h)(2).[2] As it read during the pendency of this case and at the time the superior court granted Gipson's motion for reconsideration, the rule stated:

> Child support arrearage may not be modified retroactively. A modification which is effective on or after the date that a motion for modification is served on the opposing party is not considered a retroactive modification.

#### 1. Did former Civil Rule 90.3(h)(2) only apply to decreases in child support?

Gipson argues that the legislative history of the federal counterpart of Civil Rule 90.3(h)(2) demonstrates that the rule was meant only to prohibit retroactive reductions of child support, and that the comments to former Civil Rule 90.3(h)(2) make clear that the rule was based on its federal counterpart.[3] Since this case involves a retroactive increase in child support, Gipson argues that the rule does not bar the superior court's order.

We disagree with Gipson's contention that Civil Rule 90.3(h)(2) applies only to retroactive reductions in child support. The plain meaning of the text of the rule is clear. It does not differentiate between retroactive modifications that increase child support and retroactive modifications that decrease child support. This court has previously stated that "the plainer the language of the statute, the more convincing contrary legislative history must be." *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995). This principle is equally valid where the text being interpreted is not a statute adopted by the legislature, but a Civil Rule. Additionally, the commentary to Civil Rule 90.3(h)(2), as it read during the pendency of this case in the superior court, stated in part:

> X. Modification
>
> . . . .
>
> The prohibition against retroactive modification *limits both requested decreases and increases* in child support. See Prohibition of Retroactive Modification of Child Support Arrearage, 54 Fed.Reg. 15,763 (1989).

(Emphasis added.) Thus, the plain meaning of the text of the former rule, and the commentary to the Alaska rule, indicate that the appropriate interpretation of Civil Rule 90.3(h)(2) is to prohibit both retroactive decreases and retroactive increases in child support awards.[4]

#### 2. When was Boone served with a motion for modification?

■ As previously noted, former Civil Rule 90.3(h)(2) allowed the superior court to increase Boone's child support obligation only from the date when he was served with a motion for modification. Gipson argues that CSED's March, 1992, letter to Boone

---

**2.** Civil Rule 90.3(h)(2) has been amended, effective July 15, 1995. *See infra* note 5.

**3.** She argues that "federal law and its Alaska counterpart, Civil Rule 90.3(h)(2) were intended to prevent cases where a child support obligor, through neglect or refusal to pay, incurs arrearages that would be reduced or forgiven during enforcement proceedings."

**4.** Also, 42 U.S.C. § 666(a)(9) (1991) explicitly limits retroactive modifications of child support

orders "to any period during which there is pending a petition for modification, but only from the date that the notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor." Cases where the obligee is the petitioner are petitions for a child support increase. Thus, Federal law prohibits retroactive increase, as well as decrease, of child support obligations.

constituted the "functional equivalent of a motion for modification" under Civil Rule 90.3(h)(2), and that therefore the superior court did not err in ordering Boone to pay increased child support payments as of April 1, 1992. Boone argues in part that he did not receive notice of a motion for modification until much later, and that therefore the superior court's order should be set aside.

There were five relevant mailings to Boone. The first mailing is mentioned in an affidavit obtained from a CSED employee. According to this employee, the CSED sent a "Notice of Review of Support Order and a Child Support Guidelines Affidavit" to Boone on February 26, 1992.

The second mailing was dated March 24, 1992. It was signed by Michelle L. Wall–Rood, Child Support Enforcement Representative, and the letterhead stated "State of Alaska Department of Revenue Child Support Enforcement Division". The text of the letter reads in full:

> We are currently in the process of reviewing your child support order for a possible modification in the support amount. In order to make our income determination as accurate as possible we need additional information from you. Please complete the enclosed affidavit, attach back-up documentation such as your most recent tax return and current paystubs and return the information to us within 10 days.
>
> If you have any questions contact us. The kids line is available 24 hours a day to leave a message on.

Despite the language stating that CSED "need[ed]" the additional information, and the letter's request that Boone respond within ten days, the letter made no mention of pending legal action or court proceedings seeking modification of Boone's support obligation.

The third mailing Boone received was entitled "NOTICE", and was dated September 7, 1993. It was from Linda L. Kesterson, Assistant Attorney General. The text of this document stated in full:

> PLEASE TAKE NOTICE that pursuant to Civil Rule 77 you have a right to file a written response or opposition to this mo-

tion. Any such response must be filed with the Superior Court, 303 "K" Street, Anchorage, Alaska 99501, within fifteen days of service of this motion upon you, and a copy must be sent to the attorney whose name appears on this motion.

To the notice was attached a "Motion For Order That Obligor Submit Income Information", an affidavit submitted by Gipson, and a memorandum supporting the motion. This letter indicated that legal proceedings had begun, but did not mention that a motion for modification of child support was at issue.

The fourth mailing that Boone received was the order signed by Judge Andrews, dated February 24, 1994, which was not mailed to Boone until March 7, 1994. The full text of the order reads:

> IT IS HEREBY ORDERED that Daniel A. Boone shall submit his 1992 tax return including all schedules and supporting documentation and a signed and notarized guidelines affidavit in the form attached including supporting documentation such as paystubs to the court and to the Child Support Enforcement Division (CSED), 550 W. 7th Ave. 4th Floor, Anchorage, Alaska 99501, within 15 days of the date of this order. If the obligor fails to submit the information as required by this order, upon notice by the state of the obligor's noncompliance, the court shall enter a support order of $1,000 per month effective April 1, 1992 based on an imputed adjusted income of $60,000.

Again, the mailing made no explicit mention that a motion for modification of child support was filed and pending.

The final relevant mailing that Boone received was entitled "Notice of Motion (Civil Rule 5(9)) and Motion to Modify Child Support". It was dated September 13, 1994 and was mailed to Boone on October 7, 1994.

It is clear that the document titled "Motion to Modify Child Support" which was mailed to Boone on October 7, 1994, satisfied former Civil Rule 90.3(h)(2), and that the superior court would have been justified in ordering Boone to pay child support arrearages on increased child support back to the date it was served on him.

The first part of former Civil Rule 90.3(h)(2) states a general prohibition on modifying child support payments retroactively. The second half of the rule provides for an exception to this general prohibition. Given the general prohibition, we think that the exception should be construed narrowly. Since the exception in the second half of the rule only refers to motions for modification, and contains no indication that "functional equivalents" of motions for modification also suffice, we conclude that nothing short of a motion or petition for modification satisfies the requirement of the former rule. Therefore, we conclude that the superior court erred in ordering Boone to pay increased child support to Gipson retroactive to April 1, 1992. This aspect of the superior court's ruling is therefore vacated and remanded for redetermination in accordance with this opinion.[5]

## V. CONCLUSION

The superior court's judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.[6]

**5.** Civil Rule 90.3(h)(2) was modified on July 15, 1995, which was after the superior court's grant of Gipson's motion for reconsideration. The rule now states:

> Child support arrearage may not be modified retroactively. A modification which is effective on or after the date that a motion for modification, *or a notice of petition for modification by the Child Support Enforcement Division,* is served on the opposing party is not considered a retroactive modification.

(Emphasis added.) Civil Rule 98 provides:

> These rules become effective on the date to be established by order of the supreme court. They shall govern all civil actions and proceedings thereafter commenced and so far as just and practicable all proceedings then pending.

Since we are of the view that the new and old versions of the rule command the same result in this case, we conclude that it would be just and practicable for the superior court to apply the new version of Civil Rule 90.3(h)(2) on remand.

**6.** We decline to address Boone's standing and subject matter jurisdiction arguments since they are raised for the first time in his reply brief. Nor do we deem it appropriate to address Gipson's estoppel argument, made at oral argument, given that Gipson failed to explicitly brief the issue.

As the issue of subject matter jurisdiction may be raised at any point in the proceeding, *Burrell v. Burrell,* 696 P.2d 157, 162 (Alaska 1984), Boone may address this issue on remand to the superior court, where Gipson will have the opportunity to respond.