John DOE, Appellant,

v.

STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, Appellee.

No. S–10338.

Supreme Court of Alaska.

June 11, 2004.

Andrew Harrington, Fairbanks, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

This appeal presents a discrete question left unanswered by the United States Supreme Court in its recent decision rejecting a constitutional challenge to Alaska's sex offender registration statute. After he was convicted of a sex offense, John Doe[1] received a suspended imposition of sentence (SIS), subject to satisfying specified conditions. When Doe's probationary period expired without imposition of sentence, the superior court set aside his conviction under authority of AS 12.55.085(e). The Alaska Sex Offender Registration Act (ASORA)[2] became effective soon after the court set aside Doe's conviction. ASORA requires persons convicted of sex offenses to register with the state and to provide and periodically update

---

1. "John Doe" is a pseudonym.

2. AS 12.63.010–.100.

detailed personal information that the state then publishes on the Internet. We conclude that applying ASORA to a person whose conviction was set aside before ASORA became specifically applicable to convictions that were set aside violates the Alaska Constitution's guarantee of due process. We therefore remand for entry of an order enjoining the state from publishing Doe's personal information and requiring it to return all information Doe provided when he registered under protest.

## II. FACTS AND PROCEEDINGS

John Doe was found guilty after a bench trial on two counts of child sexual abuse for offenses he committed in 1987. He appeared before the superior court for sentencing in 1989. The court entered an order suspending the imposition of sentence, conditioned on Doe serving probation for three years, spending ninety days at a halfway house, completing 200 hours of community work service, and receiving mental health counsel-

ing. After one count was later dismissed, the superior court entered a "corrected modified order" on the remaining count in May 1991. The 1991 order again granted Doe a suspended imposition of sentence (SIS). So far as we can determine from the record, the state did not object to the 1991 SIS. In April 1994, as Doe's period of probation was expiring, the Alaska Department of Law gave the superior court written notice that the state did not oppose setting aside Doe's conviction; the superior court then entered a "discharge order." The discharge order observed that the period of probation had expired without imposition of sentence and that Doe was "entitled to be discharged" under AS 12.55.085(d) and Alaska Rule of Criminal Procedure 35.2; it consequently ordered that the "[j]udgment of conviction is hereby set aside." [3]

The legislature enacted the Alaska Sex Offender Registration Act (ASORA) in May 1994.[4] ASORA became effective August 10,

3. AS 12.55.085 gives courts authority to suspend the imposition of sentence. At Doe's 1989 sentencing hearing, Superior Court Judge pro tem. Jane F. Kauvar, reading a passage in the presentence report to say that Doe had been offered an SIS before trial, announced an intention to consider an SIS. A 1988 amendment to AS 12.55.085 prohibited suspending the imposition of sentences of persons convicted of certain crimes, including sex offenses. Ch. 36, § 2, SLA 1988 (codified as AS 12.55.085(f)). The court reasoned that it was appropriate to give Doe an SIS because there would have been no question about Doe's eligibility for an SIS for his 1987 offense had he been sentenced earlier, before the amendment took effect. The prosecutor brought the amendment to the court's attention, but did not unequivocally argue that an SIS would be illegal. After the court granted the SIS, the prosecutor raised no objection. The state did not appeal the SIS. After Doe's probation expired in 1994, the state filed its written non-opposition to setting aside the conviction and did not argue that the 1988 amendment prevented the court from setting Doe's conviction aside.

4. Ch. 41, § 4, SLA 1994 (codified as AS 12.63.010). Following amendment in 1999, ASORA defines "sex offender" as follows: " 'sex offender or child kidnapper' means a person convicted of a sex offense or child kidnapping in this state or another jurisdiction regardless of whether the conviction occurred before, after, or on January 1, 1999." AS 12.63.100(5).

ASORA defines "sex offense" as follows:
(6) "sex offense" means

(A) a crime under AS 11.41.100(a)(3), or a similar law of another jurisdiction, in which the person committed or attempted to commit a sexual offense, or a similar offense under the laws of the other jurisdiction; in this subparagraph, "sexual offense" has the meaning given in AS 11.41.100(a)(3);

(B) a crime under AS 11.41.110(a)(3), or a similar law of another jurisdiction, in which the person committed or attempted to commit one of the following crimes, or a similar law of another jurisdiction:
(i) sexual assault in the first degree;
(ii) sexual assault in the second degree;
(iii) sexual abuse of a minor in the first degree; or
(iv) sexual abuse of a minor in the second degree;

(C) a crime, or an attempt, solicitation, or conspiracy to commit a crime, under the following statutes or a similar law of another jurisdiction:
(i) AS 11.41.410–11.41.438;
(ii) AS 11.41.440(a)(2);
(iii) AS 11.41.450–11.41.458;
(iv) AS 11.41.460 if the indecent exposure is before a person under 16 years of age and the offender has a previous conviction for that offense;
(v) AS 11.61.125 or 11.61.127;
(vi) AS 11.66.110 or 11.66.130(a)(2) if the person who was induced or caused to engage in prostitution was 16 or 17 years of age at the time of the offense; or
(vii) former AS 11.15.120, former 11.15.134, or assault with the intent to commit rape un-

1994.[5] It requires sex offenders present in Alaska to register with the Alaska Department of Corrections, local police, or the Alaska State Troopers and to provide and update specified personal information.[6] The act requires the Alaska Department of Public Safety to make most of that information available to the public.[7] All fifty states and the District of Columbia have some form of sex offender registration act.[8] These statutes are commonly known as "Megan's Laws" after Megan Kanka, a seven-year-old New Jersey girl who was sexually assaulted and murdered in 1994 by a neighbor who had two prior convictions for sex offenses against children.[9]

ASORA requires each registrant to provide extensive personal information: name, address, and place of employment; the crime triggering the duty to register and the date and place of the conviction; all aliases used; a description of any personal identifying features; driver's license number; a description and the license plate number and vehicle identification number of any vehicles the registrant drives or has access to; anticipated address changes; and information about any psychological treatment received.[10] Regis-

trants must also allow themselves to be photographed and fingerprinted.[11] Registrants must update their information if it changes.[12] A registrant's fingerprints, driver's license number, anticipated address changes, and psychological treatment history are kept confidential.[13] The remaining information is made available to the general public through a central registry maintained by the Alaska Department of Public Safety and posted on the Internet.[14]

The Department of Public Safety promulgated a regulation in 1995 defining "conviction" for purposes of ASORA to include findings of guilt by a court "whether or not the judgment was thereafter set aside under AS 12.55.085." [15] In 1999 the legislature amended ASORA's statutory definition of "conviction" to include judgments that had been set aside under AS 12.55.085.[16] The state argues that ASORA applies to Doe. We assume, per the state's assertion, that it does.

Doe did not initially register when ASORA was enacted in 1994. He registered under protest in November 1997 after a letter from the state told him that ASORA required him to register and warned him of the criminal

---

der former AS 11.15.160, former AS 11.40.110, or former 11.40.200. . . .
AS 12.63.100(6).

**5.** Ch. 41, SLA 1994.

**6.** AS 12.63.010.

**7.** AS 18.65.087.

**8.** Wayne A. Logan, *Liberty Interests in the Preventive State: Procedural Due Process and Sex Offender Community Notification Laws*, 89 J.CRIM. L. & CRIMINOLOGY 1167, 1172 (1999). In 1994 the United States Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071 (1994 & 2003). This legislation obligated every state to enact a sex offender registration program at least meeting minimum guidelines specified by the United States Attorney General or forfeit ten percent of a federal funding grant for law enforcement. 42 U.S.C. § 14071(g)(2)(A).

**9.** *See Smith v. Doe*, 538 U.S. 84, 89, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); Logan, *supra* note 8, at 1172.

**10.** AS 12.63.010(b)(1)(A)-(H).

**11.** AS 12.63.010(b)(2).

**12.** AS 12.63.010(d)(1).

**13.** AS 18.65.087(b).

**14.** *See* Alaska Dept. of Public Safety, *Sex Offender Registration Central Registry*, at http://www.dps.state.ak.us/nSorcr/asp/.

**15.** 13 Alaska Administrative Code (AAC) 09.900(a)(2) (1996) (am.11/3/99).

**16.** Chapter 54, section 15, SLA 1999, codified as AS 12.63.100(3), provides:

"conviction" means that an adult, or a juvenile charged as an adult under AS 47.12 or a similar procedure in another jurisdiction, has entered a plea of guilty, guilty but mentally ill, or nolo contendere, or has been found guilty or guilty but mentally ill by a court or jury, of a sex offense or child kidnapping regardless of whether the judgment was set aside under AS 12.55.085 or a similar procedure in another jurisdiction or was the subject of a pardon or other executive clemency; "conviction" does not include a judgment that has been reversed or vacated by a court.

consequences for failing to register.[17] A week after he registered, Doe filed for injunctive and declaratory relief, alleging that enforcing the registration requirement against him violated his constitutional rights and that the Department of Public Safety did not have the authority to promulgate the regulation defining "conviction" to include convictions that were set aside.[18]

Superior Court Judge Richard D. Savell granted Doe a temporary restraining order that precluded the Department of Public Safety from publicizing his registration information; the court also allowed Doe to prosecute his lawsuit under a pseudonym. The superior court ultimately granted summary judgment to Doe, ruling that the department had overstepped the scope of its authority in defining "conviction" to include convictions that had been set aside. The superior court held that the legislature did not clearly indicate its intention to include "set-asides" in ASORA's registration requirement, and that the department's inclusion of set-asides therefore exceeded the department's authority to promulgate regulations effectuating ASORA's purpose.

The Department of Public Safety appealed these rulings to this court. We ordered the appeal stayed while the Alaska Court of Appeals considered in another case whether the department had authority to adopt 13 AAC 09.900(a)(2). The court of appeals ultimately concluded in that case, *State v. Otness*, that the regulation was valid because it was "consistent with the legislative purpose to protect the public." [19]

Given the court of appeals's decision in *Otness*, we remanded the department's appeal in Doe's case to the superior court for

reconsideration. Judge Savell ultimately vacated his earlier judgment, denied summary judgment to Doe, and granted summary judgment to the department. The superior court based its decision on *Otness* and *Patterson v. State*.[20] In *Patterson*, the court of appeals considered and rejected a sex offender's challenge to ASORA's constitutionality, holding that ASORA did not violate state or federal constitutional ex post facto, double jeopardy, due process, or equal protection provisions, or Alaska's constitutional guarantee of the right to privacy.[21] Applying *Patterson*, the superior court in Doe's case rejected all of Doe's constitutional claims and upheld ASORA as applied to Doe.

Doe appeals.

## III. DISCUSSION

### A. Standard of Review

We review de novo questions of law, including issues of statutory interpretation.[22] We apply our independent judgment in deciding whether a statute violates the Alaska Constitution.[23]

### B. Decisions of the United States Supreme Court and the Ninth Circuit Rejecting Federal Challenges to the Alaska and Connecticut Sex Offender Registration Acts Do Not Resolve the Issue Presented Here.

Before discussing Doe's state constitutional arguments, we address the effect of two recent decisions of the United States Supreme Court rejecting federal constitutional challenges to the sex offender registration

---

17. *See* AS 11.56.840 (defining failure to register under ASORA as class A misdemeanor). Class A misdemeanors are punishable by up to one year in jail and by a fine up to $10,000. *See* AS 12.55.135(a), .035(b)(5).

18. AS 18.65.087 authorizes the department to maintain a central registry of all sex offenders required to register and to promulgate and adopt regulations necessary to effectuate ASORA's purpose. As noted above, the legislature in 1999 redefined "conviction" to include a "judgment ... set aside under AS 12.55.085." AS 12.63.100(3) (1999).

19. *State v. Otness*, 986 P.2d 890, 892 (Alaska App.1999).

20. *Patterson v. State*, 985 P.2d 1007 (Alaska App. 1999).

21. *Id.* at 1011–18.

22. *Boone v. Gipson*, 920 P.2d 746, 748 (Alaska 1996).

23. *Todd v. State*, 917 P.2d 674, 677 (Alaska 1996).

statutes of Alaska and Connecticut.[24] Doe's case differs from the Supreme Court's cases in an important respect: the superior court granted Doe an SIS and set aside his conviction before ASORA became effective. Those cases did not require the Supreme Court to decide the question before us: whether applying ASORA to Doe would violate his due process rights given that he satisfied the conditions of the SIS and the trial court set aside his conviction before ASORA became specifically applicable to convictions that were set aside.

*Smith v. Doe* resolved a federal constitutional challenge to the Alaska Sex Offender Registration Act.[25] The United States Court of Appeals for the Ninth Circuit had held that ASORA violated the ex post facto clause of the United States Constitution.[26] Holding on certiorari that it did not, the Supreme Court reversed and remanded to the Ninth Circuit for consideration of the registrant's remaining federal constitutional arguments.[27] We are not bound here by the Court's decision upholding the Alaska statute, because it decided only that ASORA did not violate the federal ex post facto clause. It did not turn on the state due process concepts that control our analysis in this appeal.

*Connecticut Department of Public Safety v. Doe*, decided the same day, rejected a federal procedural due process challenge to Connecticut's sex offender registration act.[28] The United States Court of Appeals for the

Second Circuit had held that the Federal Constitution's guarantee of procedural due process required Connecticut to provide a convicted sex offender with an individualized hearing on the issue of his dangerousness before requiring him to register.[29] The Supreme Court reversed, holding that the federal right of procedural due process did not require an individualized hearing on that issue.[30]

A recent Ninth Circuit decision, *Doe v. Tandeske*, also upheld ASORA against federal due process challenges.[31] *Tandeske* is the Ninth Circuit's decision on remand of *Smith v. Doe*.[32] Relying on *Connecticut Department of Public Safety*, the Ninth Circuit held that ASORA does not deprive convicted sex offenders of the federal right to procedural due process.[33] Likewise, the Ninth Circuit determined that *Smith* precluded it from concluding that ASORA violates rights to substantive due process under the Federal Constitution.[34] *Tandeske*, like *Smith* and *Connecticut Department of Public Safety*, did not address the narrow issue presented here. *Tandeske* concerned two convicted sex offenders who had served sentences of incarceration for their crimes.[35] Unlike Doe's situation, it appears that the impositions of their sentences were not suspended and that their convictions had not been set aside before ASORA was enacted and became effective. Thus the case did not decide whether applying ASORA to a person whose conviction has been set aside violates due process.

**24.** *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

**25.** *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). The "Doe" in the case now before us is not one of the two "Does" in *Smith*.

**26.** *Doe v. Otte*, 259 F.3d 979 (9th Cir.2001).

**27.** *Smith*, 538 U.S. at 106, 123 S.Ct. 1140.

**28.** *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

**29.** *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 62 (2d Cir.2001).

**30.** *Connecticut Dep't of Pub. Safety*, 538 U.S. at 7–8, 123 S.Ct. 1160.

**31.** *Doe v. Tandeske*, 361 F.3d 594 (9th Cir.2004) (per curiam).

**32.** *Doe v. Otte*, 259 F.3d 979 (9th Cir.2001), was the Ninth Circuit's first decision considering the claims of two "Doe" parties, neither of whom is the "Doe" in the case we decide today. On certiorari, the case became *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164. On remand, the case became *Doe v. Tandeske*, 361 F.3d 594.

**33.** *Tandeske*, 361 F.3d at 596 (citing *Connecticut Dep't of Pub. Safety*, 538 U.S. at 7–8, 123 S.Ct. 1160).

**34.** *Id.* at 597 (citing *Smith*, 538 U.S. at 102, 123 S.Ct. 1140).

**35.** *Doe v. Otte*, 259 F.3d at 983.

## C. ASORA Violates Doe's Due Process Rights Under the Alaska Constitution.

Doe advances various grounds for his contention that ASORA cannot constitutionally be applied to him. He argues that ASORA deprives him of liberty and violates the Alaska Constitution's guarantee of due process. He also argues that applying ASORA to him violates the prohibitions against ex post facto laws and double jeopardy, denies him equal protection, infringes on the doctrine of separation of powers, and interferes with the Alaska Constitution's guarantee of a right to privacy. The state contests each of these claims.

Doe contends in essence that applying ASORA to him violates his fundamental right to be free from significant, new affirmative burdens resulting from his conviction even though a court set aside that conviction before the statute was enacted. Doe's arguments encompass the grounds on which we rule and squarely raise the question of the legitimacy of the government's interference with his fundamental interests in liberty and fair procedural treatment.

 State courts are not necessarily bound by the United States Supreme Court's decisions when they consider issues of state constitutional law.[36] Only the Supreme Court's decisions on issues of federal law, including issues arising under the Federal Constitution, bind the state courts' consideration of those issues. The Alaska Supreme Court is the final authority on whether an Alaska statute violates the Alaska Constitution.[37] Doe's appeal involves Alaska's constitutional guarantee of due process. The Federal Constitution protects the due process rights of all Americans. But federal law does not preclude the Alaska Constitution from providing more rigorous protections for the due process rights of Alaskans.[38] When we interpret a provision in the Alaska Constitution, we are not bound by the United States Supreme Court's interpretation of the corresponding provision in the Federal Constitution.[39] We may not undermine the minimum protections established by the United States Supreme Court's interpretations of the Federal Constitution. But we have repeatedly explained that

> we are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution if we find such fundamental rights and privileges to be within the intention and spirit of our local constitutional language and to be necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage.[40]

**36.** See *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[S]tate courts are the ultimate expositors of state law.").

**37.** See *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) ("[W]e will not review judgments of state courts that rest on adequate and independent state grounds."); *Stephan v. State*, 711 P.2d 1156, 1160 (Alaska 1985).

**38.** *Stephan*, 711 P.2d at 1160 ("[W]e construe Alaska's constitutional provision ... as affording rights beyond those guaranteed by the United States Constitution."); *Burnor v. State*, 829 P.2d 837, 839 (Alaska App.1992).

**39.** *Todd v. State*, 917 P.2d 674, 681 (Alaska 1996) ("This court is free to interpret the state constitutional provision as it sees fit, so long as the interpretation does not undermine the minimum protections established by the United States Supreme Court in decisions interpreting the federal constitution."); *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 280–81 (Alaska 1994) (explaining that although free exercise of religion clauses of Alaska and United States Constitutions are identical, this court is not bound by United States Supreme Court interpretation of federal free exercise clause and instead this court "may provide greater protection to the free exercise of religion under the state constitution than is now provided under the United States Constitution"); *Blue v. State*, 558 P.2d 636, 641 (Alaska 1977) ("[T]he Alaska Supreme Court is not limited by decisions of the United States Supreme Court or by the United States Constitution when interpreting its state constitution."); *Bush v. Reid*, 516 P.2d 1215, 1219–20 (Alaska 1973); *Baker v. City of Fairbanks*, 471 P.2d 386, 402 n. 26 (Alaska 1970); *Roberts v. State*, 458 P.2d 340, 342 (Alaska 1969).

**40.** *Baker*, 471 P.2d at 401; *see also Valley Hosp. Ass'n v. Mat–Su Coalition for Choice*, 948 P.2d 963, 967 (Alaska 1997) ("[O]ur articulation of the protection of reproductive rights under Alaska's constitution may be broader than the minimum set by the federal constitution."); *Shagloak v. State*, 597 P.2d 142, 145 n. 14 (Alaska 1979) ("A state supreme court is not limited by the decisions of the United States Supreme Court or by the federal constitution when interpreting the

The Supreme Court's two recent decisions dealing with state registration statutes exclusively concerned federal constitutional challenges.

▮▮▮ We have often recognized the importance of personal liberty under our constitution. "[A]t the core of this concept is the notion of total personal immunity from governmental control."[41] The right is not absolute; its limits depend on a balance of interests that varies with the importance of the right infringed.[42] When the state encroaches on fundamental aspects of the right to liberty, it must demonstrate a compelling government interest and the absence of a less restrictive means to advance that interest.[43]

### 1. The meaning and effect of setting aside a conviction

Doe argues that because the superior court set aside his conviction before ASORA was enacted, the state cannot now force him to register and divulge new, private information. To evaluate his argument and the importance of the liberty interest at stake, we

must consider the meaning and effect of setting aside a conviction.

When Doe was convicted, the superior court suspended the imposition of his sentence, subject to several conditions. Doe met those conditions. After Doe's probationary period expired without imposition of sentence, the superior court, with the state's consent, entered a judgment setting aside his conviction.

Alaska Statute 12.55.085 governs the suspended imposition of sentences and conviction set-asides.[44] It grants a trial judge discretion to suspend, in the interest of justice, the imposition of a sentence and place the defendant on probation.[45] If the defendant satisfies the terms and conditions of the probation without incident, "the court may set aside the conviction and issue to the person a certificate to that effect."[46] Such measures are typically reserved for low-risk, first-time offenders,[47] a description the superior court found fit Doe when it suspended imposition of his sentence.[48]

---

provisions of the state constitution, since the latter may have broader safeguards than the minimum federal standards."); *Lemon v. State,* 514 P.2d 1151, 1154 n. 5 (Alaska 1973) (explaining that this court may adopt own interpretations of Alaska Constitution as long as it meets minimum standards set by United States Supreme Court interpretations of Federal Constitution).

**41.** *Breese v. Smith,* 501 P.2d 159, 168 (Alaska 1972).

**42.** *Sampson v. State,* 31 P.3d 88, 91 (Alaska 2001).

**43.** *Id.* (citing *Valley Hosp. Ass'n,* 948 P.2d at 969; *Ravin v. State,* 537 P.2d 494, 497–98 (Alaska 1975)).

**44.** AS 12.55.085(a) provides, in pertinent part:
[I]f it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be served, the court may, in its discretion, suspend the imposition of the sentence ... upon the terms and conditions that the court determines, and shall place the person on probation, under the charge and supervision of the probation officer ....

**45.** AS 12.55.085(a).

**46.** AS 12.55.085(e). No known legislative history explains the origins of "set aside." Alaska Criminal Rule 35.2 implements AS 12.55.085(e).

**47.** *See Wickham v. State,* 844 P.2d 1140, 1143 (Alaska App.1993).

**48.** At the 1989 SIS hearing, the superior court said:
I feel very comfortable in saying that I think it is a minimal offense, because of the fact that even by [the victim's] worst allegation, it was a brief incident.... I'd say that it is mitigated by the fact that I think you are not somebody who otherwise commits offenses.... I think that your basic personality, of wanting to do what's right, and not wanting to do what's wrong, ... will keep you from getting back in this position.... I still think that your basic personality, and your basic lack of interest ... in little boys will keep you—I think it was situational. I really do believe ... it happened, but I believe it was situational. I think it was at a time—one of the times in your life when you were not as stable, you were moving. You didn't have anybody you were close to at the time. You didn't have a serious relationship at that time, and I think those things have changed since when this incident happened, and I think that with the stability offered by all the people here in the back of the courtroom, and your wife and daughter, I hope you will not be back in this situation, but I do feel at the particular time that this happened that you were not in as good a frame a mind as you are now. I think there is a high probability of successful rehabilitation, of you as a non-crimi-

A conviction that has been set aside is not a "conviction" in situations in which a sentence is increased or a crime is defined by a prior conviction.[49] A conviction that was set aside is not a "prior conviction" within the meaning of AS 12.55.125 and .145 (if sufficient time has elapsed), which describe the proper use of prior convictions in sentencing.[50] Moreover, a person with a conviction that was set aside has an affirmative defense in some repeat offender situations. For example, AS 11.61.200 (misconduct involving weapons in the third degree) punishes a person "who knowingly possesses a firearm capable of being concealed on one's person after having been convicted of a felony," but provides an affirmative defense to prosecution if "the underlying conviction upon which the action is based has been set aside under AS 12.55.085."[51] A conviction that was set aside may not be used to impeach a witness for having been convicted of a crime under Alaska Rule of Evidence 609(d)(2).[52]

■ In *State v. Mekiana* we discussed the purpose of suspending imposition of sentence and setting aside a conviction:

> Ordinarily, when a judge opts to order a suspended sentence the judge has evaluated the defendant's background and offense and decided the defendant deserves a chance to show that he or she has "reformed" and therefore should be rewarded with a clean record. One of the purposes of the set-aside statute is to provide defen-

dants with an incentive to meet the conditions of their probation.[53]

The Alaska Court of Appeals has also considered the meaning of a set-aside under AS 12.55.085. In *Wickham v. State* it said that a set-aside order "reflect[s] a substantial showing of rehabilitation."[54] The court of appeals wrote there that "it seems virtually inconceivable that a set-aside would ever be justified in the face of substantial evidence establishing that an offender had not actually been reformed."[55] It concluded that a conviction that has been set aside cannot be used to impeach a witness at trial.[56] In his dissent in *State v. Otness*, Chief Judge Coats observed that after defendants completed conditions of suspended imposition of sentence, "they could reasonably conclude that their criminal conviction was part of their past, and that, if they continued to be law abiding citizens, they had a good chance of not suffering any disabilities because of this prior prosecution."[57]

But as the state observes, other decisions of this court indicate that the meaning of "set aside" is not as clear as Doe claims. We have recognized that "while the collateral consequences of a set aside conviction should be limited, records of a set aside conviction can be used in certain circumstances."[58] For example, prior convictions that were set aside may be treated as aggravating factors when sentence is imposed for a subsequent crime; AS 12.55.155(c)(8) and (c)(21) allow a

nal member of society, because you've never been a particularly criminal member, other than this brief moment. As far as the necessity of isolation to prevent criminal conduct from you, I think that's fairly low. I don't think whether you are in jail or you're out of jail that there [are] kids on the street that are particularly in danger of you coming up and doing something to them.

**49.** *See, e.g.,* AS 11.46.130(a)(6) (defining theft in second degree as occurring when person commits theft under AS 11.46.100 and "the value of the property is $50 or more but less than $500 and within the preceding five years the *person has been convicted and sentenced* [for another crime of theft] on two or more separate occasions in this or another jurisdiction" (emphasis added)).

**50.** *Barrett v. State,* 772 P.2d 559, 575 (Alaska App.1989).

**51.** AS 11.61.200(a)(1), (b)(1)(B).

**52.** *Wickham v. State,* 844 P.2d 1140, 1144 (Alaska App.1993).

**53.** *State v. Mekiana,* 726 P.2d 189, 193 (Alaska 1986).

**54.** *Wickham v. State,* 844 P.2d 1140, 1144 (Alaska App.1993).

**55.** *Id.* at 1143.

**56.** *Id.* at 1144.

**57.** *State v. Otness,* 986 P.2d 890, 894 (Alaska App.1999) (Coats, C.J., dissenting).

**58.** *Spenard Action Comm. v. Lot 3, Block 1, Evergreen Subdiv.,* 902 P.2d 766, 779 n. 23 (Alaska 1995).

sentencing judge to consider a defendant's prior criminal history.[59]

Further, we have held that setting aside a conviction does not expunge the conviction from an offender's criminal record.[60] Both the conviction and the judgment setting it aside consequently remain in the public record. Members of the public, such as potential employers inquiring into a job applicant's criminal record, can learn of the existence of a conviction that has been set aside.[61] They can do this by researching court records or by requiring a person applying for employment or housing to divulge the fact of a prior conviction even if it has been set aside.

An offender's public record normally does not include information about events or circumstances post-dating the order granting the set-aside. The public record will normally include at least some description of the conduct that resulted in the conviction and the circumstances that justified the set-aside.[62] In our experience, the public record of an offender who receives a set-aside contains little of the information that ASORA makes public.[63]

A conviction that was set aside therefore has some lingering consequences. But these consequences are relatively limited, and are foreseeable to a set-aside candidate. They follow naturally from the original conviction and are not inconsistent with the findings that justify a set-aside or with the set-aside order itself.

Moreover, the offender has some ability to limit public interest in the information because it is often the offender's post-set-side elective conduct (e.g., applying for a job) that potentially requires him or her to disclose adverse information already in the public record. The defendant can limit the risk he will have to disclose this information by limiting his application choices or withdrawing applications when asked to disclose.

As we will see, the effects and consequences of ASORA are much different.

### 2. Liberty and procedural interests arising from the findings and Doe's set-aside

 Suspending the imposition of sentence requires that there be "circumstances in mitigation of the punishment, or that the ends of justice will be served."[64] An order setting aside a conviction reflects a substantial showing of rehabilitation.[65] The superior court twice carefully considered Doe's circumstances, in 1989 and 1991, when it suspended imposition of sentence. It determined that Doe's offense was not serious and that he did not pose a risk to the community. When the superior court set aside Doe's conviction in 1994, it issued him a certificate that stated that "the defendant is discharged by the court without imposition of sentence" and that "[j]udgment of conviction is hereby set aside." The set-aside thus rewarded Doe for satisfying the obligations imposed on him by the superior court, based on the confirmation that he did not pose a threat of reoffending.

**59.** *See Petersen v. State*, 930 P.2d 414, 437 (Alaska App.1996); *Larson v. State*, 688 P.2d 592, 597 (Alaska App.1984); *see also Journey v. State*, 895 P.2d 955, 959 (Alaska 1995).

AS 12.55.155 provides, in pertinent part:
(c) The following factors shall be considered by the sentencing court and may aggravate the presumptive terms set out in AS 12.55.125:
....
(8) the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior.
....
(21) the defendant has a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which the defendant is being sentenced under this section.

**60.** *Journey*, 895 P.2d at 959 (holding that granting set-aside does not require expunction of criminal record and noting that conviction that was set aside can be used in limited circumstances, such as to increase sentence for subsequent crime).

**61.** *Id.*

**62.** Any information contained in a pre-sentence report is, by rule, confidential. Alaska R.Crim. P. 32.1(b)(3).

**63.** We summarized in Part II the information ASORA makes public.

**64.** AS 12.55.085(a).

**65.** *Wickham v. State*, 844 P.2d 1140, 1144 (Alaska App.1993).

As Doe's opening brief cogently argues, a set-aside recipient "has already had to demonstrate that he does not fall in [the] category of high risk for a reoffense":

> The core legislative finding underlying enactment of the original Registration Act itself is that "sex offenders pose a high risk of reoffending after release from custody," section 1, ch. 41, SLA 1994. For individuals with set-asides, the court has already made a two-step longitudinal assessment of the likelihood of a reoffense. The court in making the initial determination to suspend imposition of sentence "has evaluated the individual's background and offense and decided the defendant deserves a chance to show that he or she has 'reformed' and therefore should be rewarded with a clean record." The offender, following a jail term if the court chooses to require it, is then put on probation for an extended period (in John Doe's case, nearly five years) to give the authorities ample opportunity to monitor his "risk of reoffending following release from custody." The court thus has had the chance to check the accuracy of its earlier prediction; if there has been a violation of the conditions of probation, then the conviction will not be set aside. Thus, any individual who has been given a set-aside has already had to demonstrate that he does not fall into that category of high risk for a reoffense.

(Footnotes omitted.)

Doe's set-aside was consequently founded on judicial findings that he presented no significant risk to the community. These findings, with respect to his 1987 conduct and his conviction, were final and unchallenged. With respect to his responsibilities flowing from his conviction, they preclude subsequent reconsideration whether he posed a significant risk of committing the same offense again.

Further, the findings resulted in the superior court's entry of the set-aside order. This was a final and unappealed judicial act.

Doe's opportunity to have his conviction set aside if he satisfied the conditions the superior court imposed was a crucial element of the order suspending the imposition of his sentence. After he satisfied the conditions,[66] confirming the court's prior findings that he was unlikely to reoffend, the set-aside created a settled expectation that the state would not subsequently use the conviction that was set aside as a basis for imposing brand-new affirmative burdens on him. The now-confirmed findings and set-aside conferred on Doe a fundamental right to be let alone with respect to the conviction that was being set aside.[67]

After the court set aside his conviction, Doe no longer had the status of a convicted person.[68] There may be unresolved questions about the full effect of setting aside a conviction. But, at a minimum, the status of a person whose conviction has been set aside differs greatly from that of a person whose conviction has not been set aside, because the set-aside recipient has now been placed in the category of persons expressly or implicitly found to pose little threat of committing new crimes.

The SIS findings and 1994 set-aside clearly give rise to interests in liberty and fair procedural treatment that merit constitutional protection.

### 3. ASORA's effect on Doe's liberty and procedural interests

■ Even though the lives of set-aside recipients may be subject to adverse, and even significant, consequences arising from the fact of their former convictions, these consequences are not inconsistent with their settled expectations and do not obviously affect their liberty interests.

---

**66.** Even before Doe satisfied the conditions, a reasonable reliance interest was created by the entry of the order suspending imposition of the sentence taken together with Doe's undertaking to satisfy the conditions.

**67.** *Breese,* 501 P.2d at 168.

**68.** When ASORA was enacted in 1994, it did not state that it applies to persons whose convictions were set aside. The Department of Public Safety promulgated a regulation in 1995 defining "conviction" to apply to convictions that had been set aside. 13 AAC 09.900(a)(2). In 1999 the legislature amended ASORA to the same effect. Ch. 54, § 15, SLA 1999. *See supra* note 16.

In comparison, ASORA very significantly and directly affects the lives of set-aside recipients. The ways and extent it does so differ greatly from the lingering consequences a conviction that was set aside may continue to have. The effects of ASORA arise from four features of the statute. First, it imposes on offenders an affirmative duty to register with law enforcement agencies.[69] Second, it requires offenders to disclose extensive personal information, much of which the government would not otherwise have, and much of which is not public.[70] Third, it requires offenders to keep their information current for at least fifteen years or the rest of their lives, depending on the offense.[71] This period often exceeds both the sentences actually received by some classes of offender, and the duration of any non-custodial supervision. Fourth, it requires the state to maintain a public registry of most of the disclosed information.[72]

These features derive from the assumption that persons convicted of sex offenses pose a significant danger of committing new sex offenses.[73] This general assumption is fundamentally inconsistent with the individualized findings of fact a court makes before setting aside a particular offender's conviction. These findings are a judicial determination that the particular offender does not pose significant danger of reoffending. This determination as to a particular offender is inconsistent with treating him as if he belongs to a class that poses a danger of committing new sex offenses.

Therefore, applying ASORA to an offender whose conviction has been set aside inherently conflicts with the judicial proceedings that resulted in the set-aside. Applying ASORA to the set-aside recipient therefore also defeats the offender's settled expectations that legitimately arise from the findings and the set-aside adjudication. Moreover, applying ASORA to Doe also defeats his settled expec-

tations because his conviction was set aside even before ASORA was enacted or became effective.

Imposing ASORA's affirmative duties on Doe effectively reclassifies his status from that of a person who received a judgment setting aside his conviction to that of a convicted offender whose conviction still stands. Offenders who are granted a set-aside order have been placed in the category of people who have been individually found by courts not to pose a danger to society. ASORA indiscriminately groups those people with persons who are presumed to pose a future danger. This general finding of dangerousness is inconsistent with the particularized case-by-case judicial findings made when individual defendants are granted SIS, before their convictions are ultimately set aside.

The burdens imposed by ASORA differ dramatically from those lingering consequences that survive a set-aside. ASORA imposes mandatory duties even if the defendant does not engage in new elective conduct. It imposes these duties because the defendant is physically present in the state, not because he has applied for employment, housing, or some government benefit. These burdens include affirmative duties to do things (register, disclose, and update information), not merely refrain from doing things (committing no new crimes). The duties are significant and intrusive, because they compel offenders to contact law enforcement agencies and register even if they have committed no new offense, and to disclose private information, much of it for public dissemination. They are also intrusive in their duration. Failure to comply exposes the offender to criminal sanctions.[74] ASORA thus treats offenders not much differently than the state treats probationers and parolees subject to continued state supervision. In short, it treats them as though they did not satisfy their SIS conditions, as though courts did not

**69.** AS 12.63.010.

**70.** *Id.*

**71.** AS 12.63.020.

**72.** AS 18.65.087.

**73.** Ch. 41, § 1, SLA 1994.

**74.** AS 11.56.840 (defining failure to register under ASORA as class A misdemeanor). Class A misdemeanors are punishable by up to one year in jail and by a fine up to $10,000. *See* AS 12.55.135(a), .035(b)(5).

expressly or implicitly find that they were not dangerous, as though their convictions were not set aside, and as though they had not been ordered discharged after their convictions were set aside.

There is also a significant difference between a public record that continues to memorialize a conviction after it is set aside and a state-sponsored Internet site that displays the information ASORA requires. The difference is not merely that the state has improved access to public information it had a legitimate right to gather at the time a defendant was convicted. The difference instead lies in the extent and nature of information to be divulged and the offender's duty to keep it updated. To advance ASORA's purposes effectively, the registry must include enough information to enable the public to reduce the danger registrants are assumed to pose. ASORA therefore requires a sex offender to disclose and update extensive personal information. Much of this information was not otherwise available to the public or the state when the conviction was set aside and much would not otherwise be presently available to either the public or the state. Most of the information about Doe that was to have been published in the ASORA registry was not in the public record when Doe was convicted or when the court set aside his conviction and ordered him discharged.

Because ASORA compels affirmative post-discharge conduct under threat of prosecu-

tion, because this conduct is equivalent to that often required by criminal judgments, because this sort of conduct could not be compelled absent a criminal adjudication or its equivalent, because the conviction (since set aside) is the event that triggers these duties, and because the requirement impairs one's post-set-aside freedom to be let alone, we conclude that it violates Doe's liberty interests [75] to require him to register under ASORA after the court found that Doe had satisfied the requirements of his SIS and was entitled to a set-aside, and then set aside his conviction, all before ASORA was enacted.

We also conclude that the potentially destructive practical consequences that flow from registration and widespread governmental distribution of disclosed information establish the gravity of this violation. Several sex offenders on the registry filed affidavits in support of Doe in this litigation stating that they had lost their jobs, been forced to move their residences, and received threats of violence since the establishment of the registry, even though their convictions had always been a matter of public record. Outside Alaska, there have been incidents of suicide by, and vigilantism against, offenders on state registries,[76] and offenders listed on registries often have unique difficulties locating places to reside and work. Offenders are sometimes subjected to protests and group actions designed to force them out of their jobs and homes.[77] Courts have also noted

---

75. *See, e.g., Smith v. State, Dep't of Corr.,* 872 P.2d 1218, 1222 (Alaska 1994) (finding liberty interest in "right to be free from inappropriate conditions of parole—those which unduly interfere with a parolee's personal and property rights").

76. *See* Logan, *supra* note 8, at 1176 n. 45 (citing Robert Hanley, *Shots Fired at the House of a Rapist,* N.Y. TIMES, June 17, 1998, at B1 (vigilantism); Todd S. Purdum, *Death of Sex Offender is Tied to Megan's Law,* N.Y. TIMES, July 9, 1998, at A16 (suicide); *Convicted Rapist Is Shot At,* N.Y. TIMES, July 1, 1998, at B1 (vigilantism); *Suicide is Recalled as Maine Revisits Megan's Law,* WASH. POST, Feb. 17, 1998, at A2 (suicide)).

77. One commentator has noted several examples of this, citing:

John T. McQuiston, *Sex Offender Is Suing His Neighbors Over Protests,* N.Y. TIMES, June 20, 1997, at B1 (describing rallies staged to protest

registrant's presence, throwing of brick through his car window, and harassing calls to his employer); Lisa Sink, *Long After Release Date, Man Still Lives in Prison,* MILWAUKEE J. SENTINEL, June 1, 1999, at 1 (describing inability to find residence fifteen months after date of mandatory release); *Convicted Child Molester Loses Job,* L.A. DAILY NEWS, Jan. 16, 1997, at N10 (describing how registrant was forced from his job); *Parents Protest to Oust Molester from Community: Neighbors Collect Signatures on Petitions,* SACRAMENTO BEE, July 8, 1997, at B3 (recounting neighborhood's efforts to drive out registrant); *cf.* Henry Gottlieb, *Fighting a Local Ban on Sex Criminals,* NAT'L L.J., May 17, 1999, at A7 (discussing lawsuit filed by homeowner against homeowners' association bylaw that bars residency to registrants).

Logan, *supra* note 8, at 1176 n. 45.

these serious adverse consequences.[78]

In short, we hold that applying ASORA to Doe burdens his fundamental liberty interests and right to procedural fairness arising out of the set-aside granted him in 1994, such that the state must establish a compelling governmental interest.

### 4. Whether the state's interest in applying the statute to pre-ASORA set-aside recipients is compelling

■ Having determined that application of ASORA burdens Doe's fundamental liberty and procedural interests, we must decide whether the state has demonstrated a compelling governmental interest in restricting those interests.[79] We are mindful that before a person's conviction for a sex offense can be set aside, he or she necessarily must have been convicted of that offense. When the legislature enacted ASORA, it found that "sex offenders pose a high risk of reoffending after release from custody." [80]

■ Because a lawfully entered set-aside order marks the termination of a formal judicial proceeding between the state and the defendant, it operates as a final judgment: it establishes the parties' mutual rights and obligations, and it binds both parties to its terms. Although a set-aside order does not

erase the reality of the former conviction, or entitle the defendant to proclaim his innocence,[81] it does bar the state from using the conviction or the underlying misconduct as grounds for compelling the defendant to act as though he remains convicted, has never been rehabilitated, and continues to pose a public danger.[82]

Once final, then, a set-aside order operates as a binding, case-specific determination that the charges underlying the conviction that was set aside no longer support an inference of public danger. A defendant who earns and receives a final set-aside order can reasonably expect that this determination will be honored by the state and given effect. A defendant who has satisfied his SIS conditions and whose conviction was set aside by a final order entered before ASORA became specifically applicable to convictions that have been set aside has an enforceable procedural right in the set-aside order's meaning and terms. The state therefore may not alter or ignore them without heeding the requirements of procedural fairness traditionally imposed on a party constrained by a judgment: prior notice, an opportunity to cross-examine and defend, and a case-specific showing of compelling circumstances warranting relief from the judgment.[83]

---

78. *Doe v. Pataki*, 120 F.3d 1263, 1279 (2d Cir. 1997) (noting registration "has had unfortunate consequences for many subject to its operation"); *E.B. v. Verniero*, 119 F.3d 1077, 1088–90 (3d Cir.1997) (describing incidents of harassment in New Jersey, Washington, and Oregon); *Russell v. Gregoire*, 124 F.3d 1079, 1092 (9th Cir.1997) (observing that "[n]otification may well subject offenders to humiliation, public opprobrium, ostracism, and the loss of job opportunities").

79. *Sampson v. State*, 31 P.3d 88, 91 (Alaska 2001).

80. Ch. 41, § 1, SLA 1994.

81. *See Journey v. State*, 895 P.2d 955, 959 (Alaska 1995).

82. Implicitly recognizing that a set-aside order reflects more on the defendant's success in complying with the rehabilitative efforts required by the conditions of his SIS than it does on his innocence of the underlying misconduct, we have held that a set-aside does not prohibit the state from allowing public access to records documenting the defendant's original conviction and underlying offense. *See Journey*, 895 P.2d at

959. Nor does a set-aside order preclude the state from considering a former conviction and the underlying conduct to be relevant information when imposing new criminal or civil sanctions for a new offense that clouds the earlier finding of rehabilitation. *See Larson v. State*, 688 P.2d 592, 597 (Alaska App.1984) (concluding that prior conviction that was set aside does not trigger higher presumptive term for later offense, but conviction that was set aside and related facts may be considered as aggravating factors).

83. These requirements are rooted in the constitution's due process clause and inhere in a final judgment. These requirements consequently limit state action with respect to the subject of that judgment regardless of whether the state acts through its executive or legislative branch. We recognize that the legislature has broad authority to take *prospective* action redefining the availability and effects of SISs and set-aside orders. But Doe's SIS conviction and set-side order both predated the date when ASORA became specifically applicable to convictions that were set aside. It is therefore not necessary to decide in this case whether these requirements would apply to an offender who was granted an SIS

There is no legitimate reason to think that Doe presents such a danger that the state's post-set-aside interference with his liberty interests is justified. Absent the likelihood Doe will commit new sex offenses, there is no compelling government interest in requiring Doe to do the things ASORA demands. Given ASORA's burden on Doe's liberty interests and its interference with his settled expectations, we conclude that the Alaska Constitution's guarantee of due process prevents the state from contradicting the judgment of the superior court and requiring Doe to satisfy ASORA.

Because we decide that applying ASORA to Doe violates his due process rights, we do not reach Doe's other arguments.[84]

## IV. CONCLUSION

Because applying ASORA to a person whose conviction was set aside under AS 12.55.085 before ASORA became specifically applicable to convictions that were set aside unconstitutionally interferes with the individual's liberty interests and because the state has failed to establish that this application is justified by a compelling governmental interest, we REVERSE the judgment that upheld ASORA as applied to Doe and REMAND for entry of an order enjoining the state from publishing Doe's registration information and requiring the state to return all information Doe provided when he registered under protest.

MATTHEWS, Justice, concurring.

CARPENETI, Justice, not participating.

conviction before that date, but whose conviction was set aside after that date. We express no view on this issue. To the extent that *Patterson v. State,* 985 P.2d 1007, 1017 (Alaska App.1999), is inconsistent with our holding here or might be read as resolving the issue we leave open above, it is overruled.

Because Doe's conviction and set-aside order both predated the effective dates of both the 1995 regulation and the 1999 amendment which redefined "conviction" to include convictions that were set aside, it is not necessary in this case to consider whether the regulation was valid.

84. We limit our holding to set-aside recipients whose SISs were entered under AS 12.55.085 or

MATTHEWS, Justice, concurring.

My primary reasons for reversing the decision of the superior court can be summarized as follows. The SIS program offers a promise to participating defendants that in most respects they will not be treated as convicted criminals. Defendants can accept this offer by complying with the conditions imposed by the program. When so accepted, the program creates a legally protected interest. The ASORA registration requirement treats those who have had their convictions set aside under the program as convicted criminals, and does so in a particularly invasive and socially and economically disabling way. It thus substantially breaches the bargain implicit in the SIS program. This is fundamentally unfair and violates the state constitutional guarantee of due process. The opinion of the court encompasses this rationale and I join in it.

It seems useful to discuss briefly the issue of the time parameters of the cases to which this rationale applies. Clearly it does not apply to judgments suspending the imposition of sentences entered after ASORA was explicitly made applicable to convictions set aside under the SIS program.[1] The defendants in this category have notice when they begin to participate in the program that they will not be exempt from registration. There is thus no breach of a state promise and no special element of unfairness. Just as clearly, cases in which set-asides occurred before ASORA was explicitly made applicable to SIS cases should be held to be exempt from registration. In such cases defendants gave full performance in reliance on the state's promise, and a set-aside was entered. I

statutes of other jurisdictions whose provisions also require a substantial showing of rehabilitation. *See Wickham v. State,* 844 P.2d 1140 (Alaska App.1993) (noting federal cases applying Federal Rule of Evidence 609(c) that turn on whether state's set-aside procedures require affirmative finding of defendant's rehabilitation).

1. ASORA was first made applicable to SIS convictions by a regulation promulgated in 1995. The effective date of this regulation thus will be the critical date governing the application of the precedent established by the opinion of the court assuming the regulation was authorized and validly promulgated.

believe that this rationale also should apply to cases where defendants have fully or substantially performed the conditions imposed on them by the program before ASORA was made applicable to SIS cases, even if the set-aside order was entered after that time. The important thing in such cases is that the defendants have acted with the justified expectation that in most respects they will be treated as though they were never convicted. It would be as unfair to apply ASORA to them as to defendants whose convictions were set aside before ASORA was made applicable to SIS cases. A similar rationale might apply where a guilty or nolo plea was entered as a plea bargain contemplating the use of the SIS program. If such a plea were entered before ASORA applied to SIS cases, the detrimental reliance inherent in the plea could be sufficient to support an exemption from registration even if much of the probation were served after ASORA applied. Many of the views expressed in this paragraph are not encompassed in the opinion of the court. I discuss them only because they may be of some use in defining and deciding issues that will arise as to how to apply the precedent that is established today.