MATTHEWS, Senior Justice.
I. INTRODUCTION
This appeal presents two questions concerning the Alaska Sexual Offender Registration Act (ASORA).[1] The first is whether ASORA's registration requirements may be imposed on sex offenders who have moved to the state of Alaska after committing sex offenses elsewhere. The second is whether ASORA violates due process by requiring all sex offenders to register without providing a procedure for them to establish that they do not represent a threat to the public. We conclude that ASORA's registration requirements can constitutionally be applied to out-of-state offenders. We also conclude that ASORA violates due process, but its defect may be cured by providing a procedure for offenders to establish their non-dangerousness.
II. FACTUAL AND PROCEDURAL BACKGROUND
In 2000 John Doe was convicted of aggravated sexual battery in Virginia.[2] He was sentenced to five years imprisonment, with all time suspended, and a five-year term of probation. Under Virginia law Doe was required to register as a sex offender.[3] Doe moved to Alaska around the first of January 2003. On January 6, 2003, he registered as a sex offender. On April 11, 2003, the Department of Public Safety (DPS) wrote Doe indicating that he had to register annually in January of each year. He did so in 2004 and 2005. On February 4, 2005, DPS wrote Doe stating that he was required to register quarterly, for life. DPS noted that Doe's Virginia conviction "has essentially the same elements as sexual assault [first] degree ( AS 11.41.410 ), which is an aggravated offense that requires quarterly verification of your sex offender registration information." Doe did not comply with this new requirement and has not registered since January of 2005. In 2007, Doe was convicted of second degree failure to register as a sex offender.
In 2016 Doe filed suit requesting "[a] declaratory judgment which declares that the Alaska Department of Public Safety lacks jurisdiction to impose the ASORA upon the plaintiff, that the ASORA violates plaintiff's substantive due process rights and that the Department's appeal procedures are inadequate and deny procedural due process." He also sought an injunction enjoining enforcement of ASORA against him. Doe and the State filed cross-motions for summary judgment. After briefing and oral argument, the superior court entered an order granting the State's motion and denying Doe's. The superior court entered a final judgment in accordance with its summary judgment ruling and Doe filed the current appeal.
III. STANDARD OF REVIEW
This case involves questions of law. We review such questions de novo, "adopting *120 the rule of law that is most persuasive in light of precedent, reason, and policy."[4]
IV. DISCUSSION
A. ASORA
ASORA requires sex offenders to register with the Department of Corrections, the Troopers, or the local police within 30 days before their release from incarceration or within one day following conviction if their sentence does not include jail time.[5] A "sex offender" is a person who has been convicted of specified crimes that vary widely in severity.[6] Covered crimes include: murder in the course of a sexual offense;[7] child kidnapping;[8] forcible rape and rape of a child;[9] lesser degrees of sexual assault and sexual abuse of a minor,[10] including attempts;[11] online enticement and unlawful exploitation of a minor;[12] some types of indecent exposure;[13] distribution or possession of child pornography and distribution of indecent material to minors;[14] sex trafficking prostitutes under 20 years of age;[15] and patronizing a prostitute under 18 years of age.[16] Some of these crimes encompass consensual sexual acts between adolescents separated by as little as three years of age,[17] and others encompass "sexting" where sometimes no age difference is required.[18]
All registrants must disclose their name, address, place of employment, date of birth, information about their conviction, aliases, driver's license number, information about the vehicles they have access to, any identifying physical features, anticipated address changes, electronic addresses, and information about psychological treatment received.[19] Registrants are photographed and fingerprinted.[20] They must periodically re-register and update their information: those convicted of multiple or aggravated sex offenses must re-register quarterly; others must re-register annually.[21] All registration forms must be sworn to before a person authorized to administer oaths.[22] A registrant who changes residences or electronic addresses must give notice within one working day.[23]
ASORA requires DPS to maintain a central registry of sex offenders that contains the information obtained under ASORA.[24] Public access is authorized to offenders' names, aliases, dates of birth, addresses, photographs, physical descriptions, motor vehicle information, places of employment, public information about their convictions and sentences, and whether the offender is in compliance with ASORA or cannot be located.[25] DPS posts this information on the internet *121 for public viewing.[26] A photograph of each registrant appears under the caption "Sex Offender/Child Kidnapper Registry Entry Detail" followed by the registrant's information described above.[27]
The legislature made the following findings when enacting ASORA:
(1) [S]ex offenders pose a high risk of reoffending after release from custody;
(2) protecting the public from sex offenders is a primary governmental interest;
(3) the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety; and
(4) release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety.[28 ]
All sex offenders must register at least every year for 15 years,[29] while repeat offenders or offenders guilty of one "aggravated" offense-generally any sex offense more serious than sexual assault in the second degree or sexual abuse of a minor in the second degree[30] -must register quarterly for life.[31] People who have been convicted of crimes under similar laws in other jurisdictions are also sex offenders under ASORA,[32] and they must register as such by the next working day of becoming physically present in the state.[33]
ASORA's provisions require Doe to register and re-register every three months for the rest of his life as long as he remains in Alaska.[34]
B. Jurisdiction
Doe argues (1) that "Alaska lacks jurisdiction to impose punitive provisions upon a person whose acts were fully consummated outside of its jurisdiction," (2) that ASORA's registration requirements are punitive, and (3) that Alaska therefore lacks jurisdiction to impose ASORA's requirements on out-of-state offenders. This argument is logical in form, but its validity depends on whether its premises are correct.
The parties mainly focus on the second premise, disputing whether ASORA's requirements are punitive. Doe argues that they are punitive based on our 2008 decision in Doe v. State ( Doe 08 ).[35]
In Doe 08 we held that the application of ASORA's registration requirements to an offender who was convicted of sex offenses and sentenced nine years before ASORA's effective date violated the ex post facto clause of article I, section 15 of the Alaska Constitution.[36] The critical question was "whether ASORA imposes additional punishment on individuals, like Doe, who committed their crimes before ASORA became effective."[37] To answer this question we employed a two-part test, called the "intent-effects" test.[38] First, we ask whether the legislature intended the law in question to be civil and non-punitive, and thus merely regulatory, or a *122 punishment.[39] If the legislative purpose is found to be "not punishment but regulation," the second part of the test requires an inquiry as to "whether the effects of [the] regulation are so punitive" that we must conclude that the statute is punitive in nature.[40]
In Doe 08 we found it unnecessary to address the first step of the intent-effects test because, regardless of the legislature's intent, we found that the effects of ASORA were primarily punitive and therefore concluded that ASORA could not be applied to offenders who committed their crimes before the law's effective date.[41]
In deciding whether the effects of ASORA were primarily regulatory or punitive, we analyzed seven factors:
(1) "[w]hether the sanction involves an affirmative disability or restraint";
(2) "whether it has historically been regarded as a punishment";
(3) "whether it comes into play only on a finding of scienter";
(4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence";
(5) "whether the behavior to which it applies is already a crime";
(6) whether an alternative purpose to which it may rationally be connected is assignable for it"; and
(7) "whether it appears excessive in relation to the alternative purpose assigned."[42 ]
The State argues that many of the seven factors we relied on in Doe 08 do not indicate a punitive effect here because they were fully avoidable if Doe had chosen not to move to Alaska. The State also argues that some of the factors point to regulatory effects on other grounds. As to the scienter factor, the State asserts that this is absent because no finding of knowledge of wrongfulness is required to impose a duty to register on an out-of-state offender. Simply moving to the state is the triggering act.[43] Further, the State argues, traditional aims of punishment are absent because the State has no interest in punishing out-of-state offenders; rather, the State's interest lies in tracking sex offenders and informing the public about them. Similarly, the factor that asks whether the behavior the statute covers is already a crime comes out differently, according to the State, because the relevant behavior is noncriminal-again, merely moving to the state.
The State also contends that a regulatory policy interest is present here that was not present in Doe 08 : requiring out-of-state offenders to register "ensures that Alaska does not become a safe haven for convicted sex offenders."
Summing up, the State argues "there are many purposes and effects of ASORA, some punitive and some non-punitive. ... Consideration of the seven [ Doe 08 ] factors and other relevant considerations demonstrate the non-punitive, regulatory purposes and effects of ASORA override any punitive effects the registration requirement may have in this case."[44]
*123 While some of the State's arguments are plausible, we find it unnecessary to rule on them because we conclude that the first premise of Doe's argument is invalid. Doe contends that the State lacks jurisdiction to impose ASORA's registration requirements on out-of-state offenders who are present in the state because the requirements are sufficiently punitive to activate the Alaska constitutional prohibition on ex post facto laws. However, this prohibition only bars application of ASORA to offenders convicted in Alaska before ASORA's effective date.[45]
ASORA's requirements are both punitive and regulatory.[46] We are not aware of any authority that suggests that out-of-state offenders who move to the state should not be subject to them. Doe relies on cases that hold that a state cannot prosecute criminal acts that occur outside a state's boundaries unless such acts produce adverse effects within the state.[47] These cases are inapposite because they deal with the jurisdiction to prosecute criminal offenses committed outside a state.[48] By contrast, the present case involves not the prosecution of offenders, but only their duty to register once they are convicted-and only when they are present in the state.[49] The situations are not legally comparable because in the cases Doe cited, the State has no legitimate interest in prosecution, whereas the State does have a legitimate interest-public safety-with respect to registration for sex offenders.
Doe also relies on State Farm Mutual Automobile Insurance Co. v. Campbell .[50] In State Farm the United States Supreme Court held that a civil defendant's Fourteenth Amendment right to due process was violated by a state court's $ 145 million punitive damages award where the compensatory damages were only $ 1 million.[51] The Court relied primarily on the fact that at trial the plaintiff offered substantial evidence of the defendant's out-of-state conduct in other transactions, seemingly transforming the case into "a platform to expose, and punish, the perceived deficiencies of [the defendant's] operations throughout the country."[52] The Court explained that "as a general rule, ... a State [does not] have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction."[53] The Court was also concerned that "much of the out-of-state conduct was lawful where it occurred"[54] and that punishing a defendant for purported misconduct not involving the plaintiff "creates the possibility of multiple punitive damages awards for the same conduct; for in the usual case nonparties are not bound by the judgment some other plaintiff obtains."[55]
Requiring a sex offender with an out-of-state conviction to register under ASORA is different from assessing punitive damages against a defendant for out-of-state conduct against third parties. First, the State does have a legitimate public safety concern in *124 requiring out-of-state offenders who now reside in the state to register. Second, there is no concern that a sex offender's conduct was lawful where it occurred-to the contrary, by definition it resulted in a criminal conviction. Third, the Court's concern about multiple damages awards for the same conduct has no application: being forced to register as a sex offender in multiple states for the same offense is not like being assessed multiple money judgments for the same conduct.
We conclude that Alaska is not barred by lack of jurisdiction from requiring out-of-state offenders who are present in the state from registering under ASORA.
C. Due Process
1. The parties' arguments
Doe's second argument is that ASORA violates the due process clause of the Alaska Constitution.[56] In particular, he contends that ASORA infringes on a number of constitutionally protected rights, including: the right to integrate into society, the right to privacy, the right to be let alone, and the right to pursue employment. Doe contends that these rights are fundamental and that their infringement can only be justified if the State has a compelling interest and uses the least restrictive means available to vindicate that interest. He argues that there is no compelling interest justifying registration if an offender does not present a danger to the public, and that ASORA is deficient because it "provides no mechanism whereby a registrant can be relieved of the requirement if they prove they do not present a threat to the public." Doe also argues that even if there exists a compelling state interest, ASORA is unconstitutional because it fails the least restrictive means test. To satisfy that test, he contends, ASORA should contain procedures through which a rehabilitated offender may escape its requirements, as well as procedures to "calibrate the extent of public notification, if any, to a sex offender's currently assigned dangerousness."
The State responds that ASORA does not violate substantive due process. In particular, the State disputes that ASORA infringes any fundamental rights and that therefore the "compelling interest/least restrictive means" test does not apply. Instead, the State argues for a rational basis test, which ASORA would readily pass because the statute "provides, in a usable form, the information that parents and others need to protect themselves and their children from convicted sex offenders."[57] The State also argues that even if ASORA infringes a fundamental right, the State's interests are compelling and there is no less restrictive means available to protect them.[58]
2. Substantive due process
The due process clause of the Alaska Constitution provides: "No person shall be deprived of life, liberty, or property without due process of law."[59] This clause requires that adequate and fair procedures be employed when state action threatens protected life, liberty, or property interests.[60] This is procedural due process. It also may bar state action that infringes such interests in the *125 absence of a sufficient government reason making procedures irrelevant.[61] This is substantive due process. Substantive due process is a doctrine that is meant to guard against unfair, irrational, or arbitrary state conduct that "shock[s] the universal sense of justice."[62]
The distinction between procedural and substantive due process is illustrated by Connecticut Department of Public Safety v. Doe , a case involving Connecticut's sex offender registration statute.[63] A procedural due process challenge was made to Connecticut's offense-based registration system which, like Alaska's,[64] required registration based on an individual's prior conviction rather than an individual's current dangerousness.[65] The United States Court of Appeals for the Second Circuit held that this system deprived sex offenders of a protected liberty interest because officials did not afford registrants a hearing to determine whether they are likely to be "currently dangerous."[66] The Supreme Court reversed, holding that procedural due process did not apply because, under the Connecticut system, whether a registrant is currently dangerous is irrelevant: "[D]ue process does not require the opportunity to prove a fact that is not material to [a] State's statutory scheme."[67] But the Court also explained that the statute's failure to exclude non-dangerous offenders from registration requirements could be a violation of substantive due process:
In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders-currently dangerous or not-must be publicly disclosed. Unless respondent can show that that substantive rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise. It may be that respondent's claim is actually a substantive challenge to Connecticut's statute "recast in 'procedural due process' terms." Nonetheless, respondent expressly disavows any reliance on the substantive component of the Fourteenth Amendment's protections, and maintains, as he did below, that his challenge is strictly a procedural one. But States are not barred by principles of "procedural due process" from drawing such classifications. Such claims "must ultimately be analyzed" in terms of substantive, not procedural, due process. Because the question is not properly before us, we express no opinion as to whether Connecticut's Megan's Law violates principles of substantive due process.[68 ]
3. Why we apply strict scrutiny
We have employed three standards under which claims of substantive due process violations may be reviewed: strict scrutiny, intermediate scrutiny, and rational basis review.[69] Under strict scrutiny, when a law substantially burdens a fundamental right, the State must articulate a compelling state interest that justifies infringing the right and must demonstrate that no less restrictive means of advancing the state interest exists.[70] Under intermediate scrutiny, when *126 state action interferes with an individual's liberty interest that is not characterized as fundamental, the State must show a legitimate state interest and a "close and substantial relationship" between that interest and the chosen means of achieving it.[71] Under rational basis review, the party claiming a substantive due process violation has the burden of showing that there is no rational basis for the challenged legislation.[72] "This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification."[73]
We believe that strict scrutiny applies in the present case because the right to privacy is an explicitly enumerated right under the Alaska Constitution and thus should generally be considered fundamental.[74] In so concluding we follow the lead of the United States Supreme Court, which has held that the "liberty" protected by the due process clause includes the specific freedoms enumerated in the Bill of Rights.[75] The right to privacy as an enumerated freedom under the Alaska Constitution is entitled to comparable respect and standing in our jurisprudence.[76]
We limit this conclusion, however, to cases where the alleged due process violation rests on a right to privacy claim that, if asserted directly, would be analyzed under strict scrutiny. This is such a case. Our right to privacy cases can be divided into two categories: those that claim a right of personal autonomy,[77] and those that seek to shield sensitive personal information from public disclosure.[78] This case falls in the latter category. We have held that cases in the sensitive information category will be analyzed using strict scrutiny, asking the following questions:
(1) [D]oes the party seeking to come within the protection of the right to privacy have a legitimate expectation that the materials or information will not be disclosed?
(2) [I]s disclosure nonetheless required to serve a compelling state interest?
(3) [I]f so, will the necessary disclosures occur in that manner which is least intrusive with respect to the right to privacy?[79 ]
Given that this method is used in direct claims of privacy violations involving the disclosure of sensitive information, it would be anomalous to take a more permissive approach when analyzing a claim that state action violates substantive due process because it violates the right to privacy.
But the mere invocation of the right to privacy does not automatically trigger a strict scrutiny analysis. For the right to privacy to apply, there must be both a legitimate *127 expectation of privacy and a claim of a substantial infringement, as distinguished from a minimal one.[80] Further, when these requirements are met they only establish the first step of strict scrutiny review. The right to privacy is neither absolute nor unconditional, and still may be overcome by a statute enacted for compelling reasons using means that are narrowly tailored to achieve the statute's objectives.[81]
4. Legitimate expectation of privacy
We proceed to determine whether sex offenders have a legitimate expectation of privacy in the information disclosed on the internet under ASORA. A legitimate expectation of privacy is an expectation that "society is prepared to recognize as reasonable."[82] We assess the legitimacy or objective reasonableness of an expectation of privacy without considering whether there are compelling governmental reasons that outweigh the privacy claim. The sufficiency of the government's asserted countervailing interest is the subject of the second step of the strict scrutiny analysis.[83]
As already stated, Alaska's right to privacy generally protects two types of interests. One is an individual's interest in personal autonomy and independence in decision making.[84] The other is an individual's interest in protecting " 'sensitive personal information ... which if, disclosed ..., could cause embarrassment[,] anxiety,' "[85] humiliation,[86] harassment,[87] or economic and physical reprisals.[88] We are concerned here with the latter type of protection.
We have recognized that a medical marijuana user has an interest in keeping his usage of marijuana and his medical condition private;[89] that a police officer has a legitimate expectation of privacy in his personnel file;[90] and that a statute requiring a person who places a political advertisement in a newspaper to "reveal his name, address, occupation, employer, and the amount of his expenditure" burdens the right to privacy.[91] "[D]isclosure of this information could lead to *128 harassment or economic reprisals by readers, or even by an employer who did not want his name associated with particular issues."[92] Similarly, we have recognized that a statute requiring public officials to disclose clients or customers could infringe the privacy rights of the official's patients.[93]
The fact that a person has been convicted of a sex offense is, if anything, more sensitive than the fact that a person has a serious illness, is a marijuana user, or sees a particular doctor. Sex offenders are among the most despised people in our society. Widespread publication of their conviction and personal details subjects them to community scorn and leaves them vulnerable to harassment and economic and physical reprisals.[94] These serious consequences squarely fall within the evils that the right to privacy was meant to guard against.
The history of article I, section 22 (describing the Alaska constitutional right to privacy) suggests that the potential of computers to aggregate personal data was one of the core reasons for its adoption. According to an informal attorney general opinion, the legislature proposed this constitutional provision-which was later approved by the voters-"in response to a ... concern over government computers generally."[95] Leading up to the amendment's adoption there were "persistent rumors that the Alaska State Troopers were compiling secret dossiers on Alaska citizens," prompting "considerable concern in the legislature in 1972 over the potential of systems like [the Alaska Justice Information System] for invasion into the privacy of individuals."[96] Since concern about the privacy risks posed by computer databases of personal information was central to the privacy amendment's adoption, the ASORA compilation and notification provisions fall directly within the amendment's ambit.
The State argues (1) that a sex offender lacks a reasonable expectation of privacy in registry information because the fact of a sex offender's conviction is a matter of public record and (2) that his places of residence and employment are not of a "sensitive" nature. We do not accept these arguments. As to the first, the challenged publication here is not the public court file that shows a conviction, but rather the internet publication of both the conviction and personal information in a compilation of sex offenders.[97] Second, an offender's address and employment information, when included in such a compilation, is sensitive information because its publication can lead to serious negative consequences *129 that the right to privacy is meant to protect against.
With respect to the latter point, information concerning an offender's home address and place of employment are not necessarily in the public domain. Revealing a sex offender's home address potentially subjects him to harassment and physical attack. Revealing the offender's place of employment carries the same potential, plus it may discourage potential employers from hiring sex offenders because of the possible loss of business.
Returning to the first point, we recognized in Doe 08 that "[t]here is a significant distinction between retaining public paper records of a conviction in state file drawers and posting the same information on a state-sponsored website; this posting has not merely improved public access but has broadly disseminated the registrant's information."[98] Similarly, we stated that "the harmful effects of ASORA stem not just from the conviction but from the registration, disclosure, and dissemination provisions."[99] The Supreme Court of the United States has recognized this distinction in a freedom of information case:
Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information.[100 ]
A number of courts have held that a sex offender's privacy rights are implicated by internet publication of registration information, either because some of the information is private or because the aggregation and accessibility of the information raises legitimate privacy concerns, and have therefore applied strict or at least heightened scrutiny.[101] Both grounds apply in this case. As to the latter, we find particularly persuasive the following observations of the New Jersey Supreme Court:
Government dissemination of information to which the public merely has access through various sources eliminates the costs, in time, effort, and expense, that members of the public would incur in assembling the information themselves. Those costs, however, may severely limit the extent to which the information becomes a matter of public knowledge. The [New Jersey] Notification Law therefore exposes various bits of information that, although accessible to the public, may remain obscure. Indeed, as in *130 Reporters Committee ,[102 ] if the information disclosed under the Notification Law were, in fact, freely available, there would be no need for the law.[103 ]
The New Jersey court explained that "when the government assembles those diverse pieces of information into a single package and disseminates that package to the public," the government "thereby ensur[es] that a person cannot assume anonymity-in this case, [by] preventing a person's criminal history from fading into obscurity and being wholly forgotten."[104]
Internet publication of sex offender registration information potentially inflicts grievous harms on sex offenders ranging from public scorn and ostracism to harassment, to difficulty in finding and maintaining employment, to threats of violence and actual violence. Our cases establish that the privacy clause protects against the release of information that can result in such harms in other contexts,[105] and it is reasonable to expect that the privacy clause does so in the current context as well. Further, the threats to personal privacy posed by government computer data compilations like the ASORA registry were a central concern underlying the enactment of the privacy clause in the Alaska constitution. For these reasons we conclude that a sex offender may hold a legitimate and objectively reasonable privacy expectation that his conviction and personal information will not be disseminated as it is under ASORA.[106]
People who have been convicted of serious crimes, including sex offenders, have a hard time re-integrating into society after they have served their time. They should be able to expect that the state will not engage in a program of continuous publicity designed to remind the public of their past misdeeds where such a program will make their re-integration harder, if not virtually impossible. Because this expectation is reasonable, the right to privacy ensures that the state will not undertake such a program except where there is a compelling need, and only if the program is narrowly tailored to meet that need.[107]
*131 5. Compelling interest
The State argues that ASORA furthers a compelling state interest of protecting the public. Relying on decisions from other jurisdictions that quote studies showing that sex offenders "have a greater probability of recidivism than other offenders" and "are much more likely than other offenders to commit additional sex crimes,"[108] the State argues that its "interest in protecting its citizens from a group of persons who, according to studies, are far more likely to re-offend is not merely legitimate but compelling." The need is even stronger, the State continues, "because of the serious, long-term impact of sex offenses on victims," especially when the victims are children. Although the State's cited studies have been widely questioned,[109] Doe does not attempt any general *132 refutation of the State's argument that ASORA furthers a compelling interest in public safety.
The only argument Doe makes concerning the absence of a compelling interest is that if an offender is not likely to commit a new sex offense, then there is not a compelling state interest that requires registration. In support of this position, Doe cites Doe 04 's conclusion that "absent the likelihood Doe will commit new sex offenses, there is no compelling government interest in requiring Doe to do the things ASORA demands."[110] We believe that this argument is best treated as a challenge to ASORA's lack of narrow tailoring and we consider it in the next section of this opinion.
We accept the State's assertion that the publication of sex offender information under ASORA is justified by a compelling state interest.
6. Less restrictive means
Having identified and weighed the rights involved in this case, we turn to the question whether ASORA advances the State's compelling interest using the least restrictive means available.
Doe argues, among other things, that ASORA does not meet the least restrictive means because it does not permit a hearing by which a registrant can be relieved of ASORA's requirements if he proves that he does not present a threat to the public: ASORA "labels all registrants with a 'scarlet letter' of 'dangerous sex offender' without any finding in that regard." He argues that ASORA is an "offense-based" registration law rather than an "offender-based" one in which "the extent of public notification, if any" is tied to "a sex offender's currently assessed dangerousness." Doe contends that the offense-based approach is flawed because it sweeps too broadly and includes those who are no longer dangerous: "In many cases, the offense is ancient, the offender is rehabilitated and registration and notification harms registrants and infringes upon cherished liberties without serving any remedial purpose."
In response the State argues that ASORA is narrowly tailored to accomplish its public safety purposes. The State suggests that ASORA reflects a legislative judgment that individuals-not courts or agencies-should decide what level of risk is acceptable in a given situation: "The risk that a woman may tolerate when choosing a person to date is quite different from the risk a fast food restaurant may tolerate when hiring someone to clean .... The woman [ ] may choose to apply 'zero tolerance' while the restaurant may be willing to assume more risk." The State also suggests that ASORA reflects "a legislative judgment that the effects of [sex] crimes are so serious that no level of risk is acceptable."
For the reasons that follow, we conclude that Doe has the better of the argument. ASORA's coverage is excessive to the extent it applies to sex offenders who do not present a danger of committing new sex offenses. We recognized this point in Doe 04 where we observed that without "the likelihood [that the offender] will commit new sex offenses, there is no compelling government interest in requiring" him to comply with ASORA.[111]
In Doe 08 we recognized that ASORA imposed excessive burdens in relation to its regulatory purposes. We stated:
It is significant that ASORA's scope is broad; it encompasses a wide array of crimes that vary greatly in severity. Moreover, ASORA provides no mechanism by which a registered sex offender can petition *133 the state or a court for relief from the obligations of continued registration and disclosure. "Offenders cannot shorten their registration or notification period, even on the clearest determination of rehabilitation or conclusive proof of physical incapacitation."[112 ]
As a footnote to this statement we quoted Justice Ginsburg's criticism of ASORA: "[T]he Act makes no provision whatever for the possibility of rehabilitation. ..."[113] We recognized that some sex offenders can be rehabilitated and described the rehabilitation of the offender in Doe 08 :
Doe successfully completed a treatment program and was granted early release from mandatory parole. A superior court granted him legal custody of his minor daughter based on its determination that he was successfully rehabilitated and posed "a very little risk of re-offending."[114 ]
We continued, to illustrate ASORA's excessiveness: "Despite this evidence of rehabilitation, ASORA requires Doe to register quarterly and requires the state to publicly disseminate his personal information for the rest of his life."[115] We thus found that ASORA was excessive in relation to its regulatory purposes using the multi-part ex post facto analysis because ASORA did not provide an avenue for relief from its registration and disclosure requirements.[116] We now find ASORA excessive and violative of due process for the same reason. To pass muster under a least restrictive means test, ASORA must accommodate the constitutional rights of sex offenders by offering them the right to a hearing consistent with due process principles under which they may attempt to prove that they are not likely to re-offend.
The courts of two other states have decided that offense-based registration statutes are constitutionally deficient on due process grounds because they fail to offer a sex offender an individualized hearing.
One such decision is Doe v. Attorney General .[117] In that case the offender was convicted of indecent assault and battery after soliciting sex from a person who turned out to be an undercover police officer at a location reputed to be a place for consensual sexual activity between men.[118] The applicable registration law required the offender to register as a sex offender and made registration information available to the public.[119] The Supreme Judicial Court of Massachusetts held that the registration act was "unconstitutional as applied to the plaintiff in the absence of a right to a hearing and, if the hearing is requested, to a determination concerning his threat, if any, to minors and others for whose protection the act was passed."[120] The court held that fundamental fairness required this conclusion:
As to the public disclosure on request of sex offender information, it is contrary to the principle of fundamental fairness that underlies the concept of due process of law to deny the plaintiff a hearing at which the evidence might show that he is not a threat to children and other vulnerable persons whom the act seeks to protect and that disclosure is not needed when balanced against the public need to which the sex offender act responded. Government action unreasonably stigmatizing the plaintiff would violate the plaintiff's constitutionally protected rights.[121 ]
The Massachusetts court characterized this result as a failure of procedural due *134 process.[122] However, we characterize the problem as one of substantive due process because the statute's flaw was that it ruled out the need for a hearing. To use the terms of the opinion in Connecticut Department of Public Safety v. Doe , the claim appears to be "a substantive challenge to [the] statute 'recast in "procedural due process terms." ' "[123] Regardless of the terms used, the Massachusetts court found the statute to be unconstitutional because it did not provide the offender with the right to a hearing concerning his threat to the public, just as we do in the present opinion.
Another decision is State v. Bani , in which the Supreme Court of Hawaii held that the public notification requirements of that state's registration act were unconstitutional because they did not offer a sex offender a meaningful opportunity to argue "that he or she does not represent a threat to the community and that public notification is not necessary."[124] The court reasoned that the offender had constitutionally protected liberty interests that were at risk of erroneous deprivation in the absence of an individualized hearing:[125]
Undoubtedly, Bani's interest in the protected "liberty" denied him by [the statute] is great. As discussed at length above, the public notification provisions adversely affect a person's interests in reputation, employment and earning opportunities, housing, and personal safety.
....
The current procedures under the public notification provisions ... are extremely broad and contain absolutely no safeguards to prevent erroneous deprivations of a registrant's liberty interests. ... Surely, not all offenders present a significant danger to the public. Yet [the statute] currently deprives all offenders-including those who present no danger to the community and are not likely to recidivate-of these interests automatically , for life. Therefore, persons convicted of crimes listed under [the statute] who do not pose a significant danger to the community are at substantial risk of being erroneously deprived of their liberty interest.[126 ]
Another recent case has also determined that a state registration act is excessive and unconstitutional as applied to offenders who are not likely to recidivate.[127]
We have concluded that ASORA furthers a compelling state interest in protecting the public from sex offenders who "pose a high risk of reoffending after release from custody."[128] But ASORA is both too broad and arbitrary when it includes offenders who are not dangerous. Since they pose no special risk to the public, their protected liberty interests plainly outweigh any public safety interests that might be furthered by requiring them to register.
D. Remedy
ASORA is overbroad because it imposes its requirements on all persons convicted of designated offenses without affording them a hearing at which they might show that they are not dangerous. It therefore fails the *135 strict scrutiny test under which statutes that infringe on fundamental constitutional rights may be justified. We now address the question of what remedy should follow from this conclusion.
One possible remedy would be for this court to declare ASORA invalid. The legislature would almost certainly re-enact a modified ASORA that is narrower in scope, including providing for hearings for those who claim that they do not pose a likelihood of reoffending. The amended Act could prescribe useful details concerning such hearings including whether they should be conducted before an agency or the superior court, the phrasing of the precise questions to be decided, and the standard of proof to be used.
But there are also serious drawbacks to invalidating ASORA. The structure of ASORA would be temporarily taken down. All sex offenders would be exempt from registration and re-registration requirements, and the internet registry would go dark. The public safety benefits of ASORA would be lost until the Act was replaced. Further, when the replacement Act became effective, there would be new and potentially complex questions of the permissible retroactivity of the new Act. In our view, these negative factors counsel against holding ASORA to be invalid.
The alternative we choose is to permit Doe to file a civil action in the superior court in which he will be permitted to attempt to prove that he no longer poses a risk to the public that justifies continued registration.[129] If he prevails, he should be relieved of the requirements of registration. If he does not, he must comply with the Act. However, after a reasonable time, he may be permitted to file a new complaint, again seeking relief from the requirements of the Act based on a showing of changed circumstances.
The hearing remedy narrows ASORA and saves it from a ruling declaring it to be unconstitutional on the grounds urged in this case.[130] Our decision requiring an individualized risk-assessment hearing is based on the judicial power. We have employed this authority in a number of cases in which we mandated a hearing when none was required by statute,[131] or was actually prohibited by statute[132] where constitutionally protected interests were threatened by state action.
We have received no briefing as to the particular details of the hearing required by our decision. These issues should be decided by the superior court when the hearing is requested.[133] A majority of states now provide *136 for individualized risk assessment hearings under which registrants and potential registrants can be relieved of registration obligations.[134] The superior court, aided by the briefing of the parties, may find that the laws of one or more states providing for such proceedings supply an apt model.[135] In addition, various protocols for risk assessment have been developed for use in connection with sex offender registration and de-registration proceedings as well as for sentencing and supervisory purposes.[136] Some of these protocols rely only on "static factors"[137] while others rely on a combination of static and dynamic factors.[138] Guided by expert testimony, the court on remand may find one or more of these protocols to be valuable.
V. CONCLUSION
The superior court correctly concluded that Doe must register under ASORA. ASORA has effects that are both punitive and regulatory in nature. The former prevent retroactive application of the act under the ex post facto clause of the Alaska Constitution, but they do not preclude imposing registration duties on out-of-state offenders who are present in the state.
The superior court also correctly recognized that registration may seriously affect Doe's liberty interests. But the court did not strike a proper balance between Doe's liberty interests and ASORA's public safety purposes when it concluded that ASORA may be applied to Doe without affording him the right to a hearing to show that he does not pose a risk to the public sufficient to require continued registration. Doe's affected liberty interests are fundamental and thus protected from infringement by state action except under a narrowly drawn statute reasonably designed to achieve a compelling state interest. If Doe can show at a hearing that he does not pose a risk requiring registration, then there is no compelling reason requiring him to register, and the fact that ASORA does not provide for such a hearing means that the statute is unnecessarily broad.
The flaw in ASORA identified in this case is that it does not provide Doe with an opportunity to be heard. This can best be cured by providing him with such an opportunity. For these reasons the judgment of the superior court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.
BOLGER, Chief Justice, with whom STOWERS, Justice, joins, dissenting.
BOLGER, Chief Justice, with whom STOWERS, Justice, joins, dissenting.
The court's opinion applies strict scrutiny to the sex offender registration statute based *137 on the conclusion that sex offenders have a legitimate expectation of privacy in the information disclosed by registration. To reach this conclusion, the opinion relies on cases involving information that is easily recognized as private or protected: the medical condition of a medical marijuana user, a police officer's personnel file, the personal details of a political advertiser, and the professional clients of a public official.[1]
But John Doe is in a different situation. Nineteen years ago, Doe was convicted of aggravated sexual battery in Virginia. The Alaska Department of Public Safety determined that this offense had essentially the same elements as the crime of first degree sexual assault under Alaska law. In Alaska this offense now generally carries a presumptive term of 20 to 30 years' imprisonment for a first offender.[2] In addition to imprisonment, the current Alaska statute also requires probation supervision for a minimum of 15 years.[3]
These potential penalties establish that such sex offenders have a reduced expectation of privacy based on their convictions of serious felony offenses. During the term of imprisonment, an offender's expectations of privacy are almost completely overridden by the need for prison security.[4] Even after imprisonment, "a convicted and released offender has a diminished expectation of privacy" that allows the State to impose reasonable conditions on probation and parole.[5] Following the same reasoning, a number of courts have held that a sex offender has, as a result of his conviction, a reduced expectation of privacy in the information disclosed in a sex-offender registry.[6]
For one thing, a sex offender has a reduced expectation of privacy with respect to his conviction information because such information is a matter of public record.[7] Moreover, an offender convicted of a serious sex offense may have a reduced expectation of privacy due to the notoriety of the crime.[8] At least for the most serious sex crimes, a person committing such a crime arguably should realize that public dissemination of the details of his crime, resulting in stigma and infamy, is a possibility if caught. Accordingly several state legislatures have made findings that sex offenders have a reduced expectation *138 of privacy.[9]
In addition, for a convicted sex offender, the interest in privacy must be considered in relation to other legitimate constitutional concerns. The Alaska Constitution requires "criminal administration" to be based on "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."[10] The components of a criminal sentence "must be reasonably related to at least one of these constitutional principles."[11]
One of the constitutional principles implicated here is the State's interest in public safety. The Alaska Legislature relied on this principle when it enacted the registration statute, concluding that "the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety."[12] Likewise most courts that have considered the question have agreed that sex offender registration is reasonably related to the legitimate state goal of protecting the public from sex offenders.[13]
Considering the limitations on a sex offender's privacy interests and the State's constitutionally protected interest in public safety, a lower level of scrutiny is appropriate. And under such a review, the State's registration is a fair and reasonable tool to promote the State's interest.
The court's opinion also concludes that there is a less restrictive alternative to the registration statute because it does not allow an individual offender to have a hearing to show he is not dangerous. As a remedy, the court provides each sex offender with the right to a hearing to prove "that he no longer poses a risk to the public that justifies continued registration."[14] It thus leaves open a serious policy question: What quality of risk to the public is sufficient to justify registration? This determination necessarily requires analysis of important subsidiary issues: What is an acceptable risk of recidivism? What crimes would constitute a repeat offense? Over what period of time should the risk be assessed? Should the nature and degree of the crime affect the acceptability of the risk? How does a small risk of a heinous offense compare to a moderate risk of a lesser offense? How does registration affect the likelihood of recidivism? What kinds of evidence are persuasive to resolve these questions?
It is not surprising that the court's opinion refers the superior court to legislative solutions to these policy questions, concluding that the court "may find that the laws of one or more states providing for such proceedings *139 supply an apt model."[15] The opinion is thus asking the superior court to perform what is essentially a legislative function. But I believe that the Alaska Legislature has adequately answered these questions by tying both the registration requirement and the term of registration to facts that have already been admitted or established. Thus I believe the legislature reasonably concluded that John Doe's conviction of a serious sex offense is sufficient to justify registration.
Finally the court's opinion finds that the entire registration statute is unconstitutional absent a hearing in which an offender may demonstrate that they are not dangerous. As the State identified, however, Doe's general grievance addresses two distinct provisions of the law: AS 12.63.010 - .020's sex offender registration requirement and AS 18.65.087's public disclosure requirement. Yet the injuries to Doe's right to privacy follow only from disclosure. It is well-established that "[t]he unconstitutionality of a part of an act does not necessarily defeat or affect the validity of its remaining provisions."[16] The registration requirements do not harm Doe's privacy interest, and it is evident that the public disclosure provision can be severed from the remainder of the statute. So I would limit the constitutional need for a hearing to only the State's public disclosure of aggregated information and not the statute's registration requirement.

See AS 12.63.010 -.100 ; AS 18.65.087.

See Va. Code Ann. § 18.2-67.3 (1999).

Va. Code Ann. § 19.2-298.1 (West 2000) (repealed 2003).

Kiva O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs ., 408 P.3d 1181, 1185 (Alaska 2018) (quoting Bigley v. Alaska Psychiatric Inst. , 208 P.3d 168, 179 (Alaska 2009) ).

AS 12.63.010(a), (b).

AS 12.63.100(6), (7).

AS 12.63.100(7)(A), (B) ; AS 11.41.100(a)(3) ; AS 11.41.110(a)(3).

AS 12.63.100(2) ; AS 11.41.100(a)(3) ; AS 11.41.300.

AS 12.63.100(1)(C) ; AS 11.41.410 ; AS 11.41.434.

AS 12.63.100(7)(C)(I), (ii) ; AS 11.41.420 ; AS 11.41.425 ; AS 11.41.427 ; AS 11.41.436 ; AS 11.41.438 ; AS 11.41.440(a)(2).

AS 12.63.100(7)(C) ; AS 12.63.100(1)(C).

AS 12.63.100(7)(C)(iii) ; AS 11.41.452 ; AS 11.41.455.

AS 12.63.100(7)(C)(iii), (iv) ; AS 11.41.458 ; AS 11.41.460.

AS 12.63.100(7)(C)(v) ; AS 11.61.125 ; AS 11.61.127 ; AS 11.61.128.

AS 12.63.100(7)(C)(vi) ; AS 11.66.110 ; AS 11.66.130(a)(2).

AS 12.63.100(7)(C)(ix) ; AS 11.66.100(a)(2).

See AS 11.41.436(a)(6) ; AS 12.63.100(7)(C)(I).

See AS 11.61.127 ; AS 12.63.100(7)(C)(v).

AS 12.63.010(b)(1).

AS 12.63.010(b)(2).

AS 12.63.010(d).

AS 12.63.010(e).

AS 12.63.010(c).

AS 18.65.087.

AS 18.65.087(b).

AS 18.65.087(h). See Sex Offender/Child Kidnapper Registry , Alaska Dep't of Public Safety , http://www.dps.state.ak.us/sorweb/sorweb.aspx (follow "view all entries" hyperlink) (last visited Apr. 1, 2019).

See Sex Offender/Child Kidnapper Registry , Alaska Dep't of Public Safety , http://www.dps.state.ak.us/sorweb/sorweb.aspx (follow "view all entries" hyperlink, then select a name) (last visited Apr. 1, 2019).

Ch. 41, § 1, SLA 1994.

AS 12.63.010(d)(1) ; AS 12.63.020(a)(2).

AS 12.63.100(1).

AS 12.63.010(d)(2) ; AS 12.63.020(a)(1).

AS 12.63.100(6), (7).

AS 12.63.010(a)(3) ; AS 12.63.100(6). See State, Dep't of Public Safety v. Doe I , 425 P.3d 115, 119 (Alaska 2018) (analyzing what constitutes a "similar" offense under ASORA).

AS 12.63.010(d)(2).

189 P.3d 999 (Alaska 2008).

Id. at 1000-01, 1019 ; see Alaska Const. art. I, § 15 ("No ... ex post facto law shall be passed.").

Doe 08 , 189 P.3d at 1003.

Id. at 1007 (citing Smith v. Doe , 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ).

Id .

Id.

Id. at 1007 ("It is not necessary to address the first step of the test ... because the second part of the test-whether ASORA's effects are punitive-resolves the dispute before us."), 1018 ("[W]e conclude that ASORA's effects are punitive.").

Id. at 1008 (alteration in original) (quoting Kennedy v. Mendoza-Martinez , 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) ).

AS 12.63.010(a)(3).

The State's arguments on appeal largely mirror the superior court's written decision, which concluded:
Based on this Court's consideration of the seven factors applied in Doe , the non-punitive, regulatory purposes and effects of ASORA's registration requirements override any punitive effect the registration provisions of ASORA might have. ... And unlike the offender in Doe , Doe in this case could have avoided application of the statute to him. Because Alaska's interests are regulatory and the effects of the registration provisions of ASORA are not punitive, the restrictions on punishment suggested in Doe do not apply. Alaska has jurisdiction to impose the registration requirements on Doe based on his out of state conviction. To the extent Doe argues Alaska cannot require him to register at all when he moves into the state, his argument does not have merit. If Doe's arguments were accepted, sex offenders would be free to leave their convicting state and move to Alaska where they would not be subject to any registration requirement.

See Doe 08 , 189 P.3d at 1003 ("These constitutional prohibitions bar the legislature from enacting any law that '... makes more burdensome the punishment for a crime, after its commission ....' " (quoting State v. Anthony , 816 P.2d 1377, 1378 (Alaska 1991) )).

We recognized in Doe 08 that ASORA's regulatory purposes and effects were "undeniably legitimate and important" although "convincingly outweigh[ed]" by the statute's punitive effects. Id . at 1018.

Doe cites Wheat v. State , 734 P.2d 1007, 1009 (Alaska App. 1987), and State v. Dudley , 354 S.C. 514, 581 S.E.2d 171, 181-82 (S.C. App. 2003).

See Wheat, 734 P.3d at 1008 (noting that appeal dealt with jurisdiction for criminal prosecutions); Dudley , 581 S.E.2d at 173 (same).

See AS 12.63.010(a)(3).

538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

Id. at 408, 429, 123 S.Ct. 1513 ("The punitive award of $ 145 million, therefore, was neither reasonable nor proportionate to the wrong committed, and it was an irrational and arbitrary deprivation of the property of the defendant.").

Id. at 420-21, 123 S.Ct. 1513.

Id. at 421, 123 S.Ct. 1513.

Id. at 422, 123 S.Ct. 1513.

Id. at 423, 123 S.Ct. 1513.

See Alaska Const. art. I, § 7.

The superior court in its written decision recognized that registration could result in significant adverse affects on an offender's liberty:
Specific examples include offenders having difficulty finding employment, losing their jobs, being forced to move residences, receiving threats of violence, and being subject to vigilantism and protests. Based on these potential effects, requiring Doe to register as a sex offender under ASORA may seriously affect his liberty.
But the court appears to have simply assumed without express analysis that the State's interest in public safety underlying ASORA outweighed Doe's liberty interests: "General interests predominate."

The State does not argue that ASORA's registration and public disclosure provisions are severable and thus we do not consider that question.

Alaska Const. art. I, § 7.

See Millard v. Rankin , 265 F. Supp. 3d 1211, 1234-35 (D. Colo. 2017) ("This constitutional concern ... arises out of the basic unfairness of depriving citizens of life, liberty, or property, through the application, not of law and legal processes, but of arbitrary coercion." (quoting BMW of N. Am, Inc. v. Gore , 517 U.S. 559, 587, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (Breyer, J., concurring))).

See Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough , 527 P.2d 447, 452 (Alaska 1974) ("The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.").

Church v. State, Dep't of Revenue , 973 P.2d 1125, 1130 (Alaska 1999) (quoting In re Obermeyer , 717 P.2d 382, 387 (Alaska 1986), abrogated on other grounds by In re Bettine , 840 P.2d 994, 997 (Alaska 1992) ).

538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

AS 12.63.010(a) ; AS 12.63.100(6).

Connecticut , 538 U.S. at 4, 123 S.Ct. 1160.

Doe v. Dep't of Pub. Safety ex rel. Lee , 271 F.3d 38, 50, 62 (2d Cir. 2001).

Connecticut , 538 U.S. at 4, 123 S.Ct. 1160.

Id. at 7-8, 123 S.Ct. 1160 (emphasis in original) (internal citations omitted).

Huffman v. State , 204 P.3d 339, 345-46 (Alaska 2009) ; Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough , 527 P.2d 447, 452 (Alaska 1974).

Huffman , 204 P.3d at 345-46 (quoting Myers v. Alaska Psychiatric Inst. , 138 P.3d 238, 245-46 (Alaska 2006) ).

Sampson v. State , 31 P.3d 88, 91 (Alaska 2001).

Concerned Citizens , 527 P.2d at 452.

Id .

Article I, section 22 of the Alaska Constitution provides that "[t]he right of the people to privacy is recognized and shall not be infringed."

Washington v. Glucksberg , 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes [certain other rights].").

We have stressed the importance of the right to privacy: "Since the citizens of Alaska, with their strong emphasis on individual liberty, enacted an amendment to the Alaska Constitution expressly providing for a right to privacy not found in the United States Constitution, ... the right is broader in scope than that of the Federal Constitution." Anchorage Police Dep't Empls. Ass'n v. Mun. of Anchorage , 24 P.3d 547, 550 (Alaska 2001) (quoting Ravin v. State , 537 P.2d 494, 514-15 (Alaska 1975) (Boochever, J., concurring)).

See Ravin , 537 P.2d at 500 ("[T]he zone of privacy involves ... a right of personal autonomy in relation to choices affecting an individual's personal life.").

See Alaska Wildlife All. v. Rue , 948 P.2d 976, 980 (Alaska 1997) ("[U]nder appropriate circumstances, a statute requiring the disclosure of a person's identity must yield to the constitutional right to privacy.").

Id. (alterations omitted) (quoting Jones v. Jennings , 788 P.2d 732, 738 (Alaska 1990) ); accord State v. Doe , 378 P.3d 704, 706 (Alaska 2016) ; Noffke v. Perez , 178 P.3d 1141, 1151 (Alaska 2008) ; Int'l Ass'n of Fire Fighters, Local 1264 v. Mun. of Anchorage , 973 P.2d 1132, 1134 (Alaska 1999) ; Messerli v. State , 626 P.2d 81, 84 (Alaska 1980).

See Alaska Wildlife , 948 P.2d at 980 (concluding that while public employees generally lack expectation of privacy in fact of employment, they do have legitimate expectation that their names will not be disclosed once credible threats are made against them); see also Ranney v. Whitewater Eng'g , 122 P.3d 214, 222 (Alaska 2005) (concluding that provision affording death benefits for spouses but not for unmarried partners did not violate right to privacy because it imposed "only a minimal burden on the relational freedom asserted").

See Huffman v. State , 204 P.3d 339, 345-46 (Alaska 2009).

Local 1264 , 973 P.2d at 1134 (quoting Nathanson v. State , 554 P.2d 456, 458 (Alaska 1976) ).

See, e.g. , Alaska Wildlife , 948 P.2d at 980-81 ; Jones , 788 P.2d at 738.

See, e.g. , Huffman , 204 P.3d at 346 ("[T]he right to make decisions about medical treatments for oneself or one's children is a fundamental liberty and privacy right in Alaska.").

Local 1264 , 973 P.2d at 1134 (first alteration in original) (quoting Doe v. Alaska Superior Court, Third Judicial Dist. , 721 P.2d 617, 629 (Alaska 1986) ).

State v. Glass , 583 P.2d 872, 879-80 (Alaska 1978) ("The meaning of privacy ... [includes] protect[ing] 'the individual's interest in preserving his essential dignity as a human being.' " (quoting Shirley Hufstedler, The Directions and Misdirections of a Constitutional Right of Privacy , 26 Record of N.Y.C.B.A. 546, 550 (1971))).

See Luedtke v. Nabors Alaska Drilling, Inc. , 768 P.2d 1123, 1137 (Alaska 1989) (recognizing common law right "to be free from harassment and constant intrusion into one's daily affairs" (quoting Siggelkow v. State , 731 P.2d 57, 62 (Alaska 1987) )).

See State v. Planned Parenthood of Alaska , 35 P.3d 30, 40-41 (Alaska 2001) (holding that the "physical, psychological, and economic implications" of having an abortion implicated privacy rights and thus warranted a strict scrutiny analysis for a statute requiring minors to obtain parental consent or judicial authorization before having an abortion); Messerli v. State , 626 P.2d 81, 88 (Alaska 1980) (holding that possibility of "economic or other[ ]" reprisals could justify regulations protecting anonymity).

Rollins v. Ulmer , 15 P.3d 749, 752-53 (Alaska 2001) (concluding statute establishing medical marijuana registry adequately protected registrants' privacy).

Jones v. Jennings , 788 P.2d 732, 738 (Alaska 1990).

Messerli , 626 P.2d at 86.

Id.

Falcon v. Alaska Pub. Offices Comm'n , 570 P.2d 469, 479-80 (Alaska 1977).

Our case law has identified the serious harms that can result from internet publication of information concerning a sex offender. In Doe v. State, Dep't of Pub. Safety , (Doe 04 ) we noted that the consequences flowing from registration were "potentially destructive" and included: loss of employment, being forced to move, threats of violence and actual violence, difficulty locating places to reside and work, and being "subjected to protests and group actions designed to force [offenders] out of their jobs and homes." 92 P.3d 398, 410 (Alaska 2004).
In Doe 08 we noted our agreement with the observation that ASORA "exposes registrants, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism." 189 P.3d 999, 1009 (Alaska 2008). We also endorsed the observation that "by posting registrants' names, addresses, and employer addresses on the internet, the Act subjects registrants to community obloquy and scorn that damage them personally and professionally," and that "the practical effect of this dissemination is that it leaves open the possibility that the registrant will be denied employment and housing opportunities as a result of community hostility." Id. at 1009-10 (alterations omitted) (first quoting Doe I v. Otte , 259 F.3d 979, 987 (9th Cir. 2001), rev'd sub nom. Smith v. Doe , 538 U.S. 84, 123, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ; then citing id. at 988 ).
We stated in Doe 08 that "[o]utside Alaska, there have been reports of incidents of suicide by and vigilantism against offenders on state registries." 189 P.3d at 1010. Subsequent to the publication of Doe 08 , there have been reports that registrants in Alaska have been targeted for home invasion, robbery, and beating. See Tegan Hanlon, Man Charged with Assaulting 3 in Anchorage After Finding Addresses on Sex-Offender Registry , Anchorage Daily News ( July 27, 2016), https://www.adn.com/alaska-news/crime-courts/2016/07/27/man-charged-with-assaulting-3-people-in-anchorage/.

1986 Informal Op. Att'y Gen. 442 (citing numerous newspaper articles).

Id . at 441.

AS 18.65.087(a), (b).

189 P.3d at 1011.

Id .

U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press , 489 U.S. 749, 764, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ; cf. also id. at 763 n.15, 109 S.Ct. 1468 ("The common law recognized that one did not necessarily forfeit a privacy interest in matters made part of the public record, albeit the privacy interest was diminished and another who obtained the facts from the public record might be privileged to publish it.").

See, e.g. , Paul P. v. Verniero , 170 F.3d 396, 404 (3d Cir. 1999) (finding compelling state interest justified deprivation even of fundamental right to privacy); State v. Mount , 317 Mont. 481, 78 P.3d 829, 842 (2003) (upholding statutory sex offender registration requirement under strict scrutiny); Doe v. Poritz , 142 N.J. 1, 662 A.2d 367, 412 (1995) (using form of strict scrutiny that required invasion of privacy to "be minimized by utilizing the narrowest means which can be designed to achieve the public purpose" (quoting In re Martin , 90 N.J. 295, 447 A.2d 1290, 1302 (1982) )). But cf. Vega v. Lantz , 596 F.3d 77, 82 (2d Cir. 2010) (finding no deprivation of fundamental liberty interest when the stigmatizing sex offender information was true); Doe v. Moore , 410 F.3d 1337, 1345 (11th Cir. 2005) (applying rational basis, not strict scrutiny, because "a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy"); People v. Cornelius , 213 Ill.2d 178, 290 Ill.Dec. 237, 821 N.E.2d 288, 304 (2004) (holding that because internet provisions of sex offender statute did not implicate a fundamental right, "strict scrutiny analysis does not apply"); Hyatt v. Commonwealth , 72 S.W.3d 566, 573-74 (Ky. 2002) (holding sex offender lacked reasonable expectation of privacy in registration details because many details were already in public domain); State v. Williams , 88 Ohio St.3d 513, 728 N.E.2d 342, 355-56 (2000) (noting right to privacy only applies to information not "readily available to the public" and thus does not cover required registration information for sex offenders); Hendrix v. Taylor , 353 S.C. 542, 579 S.E.2d 320, 323-24 (2003) (declining to apply strict scrutiny because sex offense information was part of public record through registration in another state).

Reporters Comm. , 489 U.S. at 762-64, 109 S.Ct. 1468.

Poritz , 662 A.2d at 411.

Id .

See supra notes 85-88.

We also conclude that for reasons already stated the consequences of such dissemination are important. Thus the requirement that privacy claims involve substantial rather than minimal impacts in order to trigger strict scrutiny review is also satisfied. See supra pp. 126-27.

The dissenting opinion concludes that a lower level of scrutiny should be used for reasons that can be distilled into three categories.
First, the opinion reasons that because Doe might well still be in jail if he had committed his offense in Alaska rather than Virginia he should be treated as though he is still a prisoner with expectations of privacy that are "almost completely overridden by the need for prison security." Dissent at 137. Relatedly, even if he were only on probation or parole he would still have "a diminished expectation of privacy." Dissent at 137.
Second, the dissent notes that conviction information is a matter of public record and the notoriety of a serious sex crime itself can result in "stigma and infamy." Dissent at 137.
And third, the dissent argues that the State's interest in public safety makes "a lower level of scrutiny ... appropriate." Dissent at 138.
We disagree for the reasons that follow.
First, we believe that Doe's privacy rights must be evaluated based on his actual status as a person who is neither a prisoner, parolee, nor probationer, rather than based on the sentence he may have received if he had hypothetically committed his crime in Alaska. The exigencies of incarceration require that prisoners be subject to continuous surveillance and search at any time. "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells." Hudson v. Palmer , 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). But those exigencies do not apply to a person who is not incarcerated. To impose the privacy limitations required by incarceration on a person who is not incarcerated cannot be justified by any accepted legal theory of which we are aware. Doing so would echo, but be even less justified than, the now-rejected "constructive custody" theory under which a released offender on probation or parole was regarded as entitled to no more rights than he would have if he had remained incarcerated. See Roman v. State , 570 P.2d 1235, 1239-42 (Alaska 1977) (holding that "we do not believe that a released offender has voluntarily consented to all conditions of parole and we likewise reject the custody rationale").
Our response concerning the privacy rights of a probationer or parolee is similar. Warrantless searches of their persons or residences can be justified under conditions of release that are directly related to their underlying crimes. Id . at 1243. To that extent, they have a diminished expectation of privacy. But, as we have noted, "Any justification for treating parolees differently from any other person must stem from their special status. They are entitled to all rights accorded other persons except where valid purposes of parole require restrictions." Id . at 1240. Doe lacks the special status of a parolee or probationer. The suggestion that he should be treated as such because he probably still would be on probation or parole if he had committed his crime in Alaska cannot be squared with our case law. Moreover, parolees and probationers have rights more restricted than those enjoyed by the general public only as to searches and other intrusions that are "both consistent with the goal of rehabilitation and necessary for the proper functioning of the parole system." Id . at 1242. The continuous publication of personal and conviction information under ASORA goes well beyond these criteria and therefore should be tested under a full-rather than restricted-privacy-rights model.
The dissenting opinion's second group of reasons for concluding that a lower level of scrutiny should be employed is based on the fact that conviction records are public and that a notorious sex crime naturally results in stigma and infamy. We have already addressed the public records point at some length in this opinion. See supra pp. 128-30. Put briefly, not all the information published under ASORA is public-offender addresses and employment information most notably-and, as we recognized in Doe 08 , there is a significant distinction between retaining records of a conviction in state files and maintaining an easy-to-browse compilation of information about sex offenders on the internet. 189 P.3d 999, 1011 (Alaska 2008). As to the notoriety factor, we think it is also entitled to little or no weight. Doe's crime was serious, but not notorious, and most sex offenses and sex offenders are not remembered by the general public for long periods of time. The sex offender registry serves as a durable reminder to the public of an offender and his crimes in ways that are vastly different than the public record or notoriety of a sex offense.
As to the third reason, the State's interest in public safety, we have also already addressed this point in this opinion. See supra pp. 123-24. The State has an undoubted and strong interest in ensuring public safety. This interest plays a critical part in assessing Doe's claim because it is the countervailing interest against which Doe's constitutional claim must be weighed. We recognize in Part IV(C)(5) of this opinion (see infra pp. 131-32) that the State's interest is compelling and justifies a narrowly tailored sex offender registration law. But under our method for analyzing privacy-based constitutional claims, the asserted countervailing interest plays no role in determining whether there is a legitimate expectation of privacy. See supra pp. 126-27. That is step one of the analysis. The strength and legitimacy of the countervailing interest is relevant in the second step of the analysis, which determines whether the countervailing interest is sufficiently strong to overcome the privacy-based constitutional claim that is subject to such review.

Doe v. Pataki , 120 F.3d 1263, 1266 (2d Cir. 1997).

See, e.g. , Joshua E. Montgomery, Fixing a Non-Existent Problem with an Ineffective Solution: Doe v. Snyder and Michigan's Punitive Sex Offender Registration and Notification Laws , 51 AKRON L. REV. 537, 560-73 (2017) (describing how recidivism rates for sex offenders are low compared to other types of criminals and that registration does not reduce recidivism, and may actually increase it); Hal Arkowitz and Scott O. Lilienfeld, Once a Sex Offender, Always a Sex Offender? Maybe Not. , SCI. AM. (Apr. 1, 2008), https://www.scientificamerican.com/article/misunderstood-crimes/ (noting that general public vastly overestimates sex offenders' recidivism rates); Roger Przybylski, Adult Sex Offender Recidivism, Dep't of Just., Sex Offender Management Assessment & Planning Initiative , 107 (March 2017), https://www.smart.gov/SOMAPI/pdfs/SOMAPI_Full%20Report.pdf, ("[R]ecidivism remains a difficult concept to measure, especially in the context of sex offenders."). Recently, for example, the Sixth Circuit Court of Appeals observed:
Intuitive as some may find this, the record before us provides scant support for the proposition that SORA in fact accomplishes its professed goals. The record below gives a thorough accounting of the significant doubt cast by recent empirical studies on the pronouncement in Smith that "the risk of recidivism posed by sex offenders is frightening and high." One study suggests that sex offenders (a category that includes a great diversity of criminals, not just pedophiles) are actually less likely to recidivate than other sorts of criminals. Even more troubling is evidence in the record supporting a finding that offense-based public registration has, at best, no impact on recidivism. In fact, one statistical analysis in the record concluded that laws such as SORA actually increase the risk of recidivism, probably because they exacerbate risk factors for recidivism by making it hard for registrants to get and keep a job, find housing, and reintegrate into their communities.
Does #1-5 v. Snyder , 834 F.3d 696, 704-05 (6th Cir. 2016) (emphasis in original) (citations and alterations omitted).

Doe 04 , 92 P.3d 398, 412 (Alaska 2004).

Id .

Doe 08 , 189 P.3d at 1017 (quoting Smith v. Doe , 538 U.S. 84, 117, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Ginsburg, J., dissenting)).

Id . at 1017 n.143 (second alteration in original) (quoting Smith , 538 U.S. at 117, 123 S.Ct. 1140 (Ginsburg, J., dissenting)).

Id . at 1017 (quoting Doe I v. Otte , 259 F.3d 979, 983 (9th Cir. 2001), rev'd sub nom. Smith , 538 U.S. at 92, 106, 123 S.Ct. 1140 ).

Id .

Id .

426 Mass. 136, 686 N.E.2d 1007 (1997).

Id . at 1009.

Id . at 1012 ; see former Mass. Gen. Laws ch. 6, §§ 178C -179O (1996).

Attorney Gen. , 686 N.E.2d at 1014.

Id . (citations omitted).

Id . at 1013.

538 U.S. 1, 8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (quoting Reno v. Flores , 507 U.S. 292, 308, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ).

97 Hawai'i 285, 36 P.3d 1255, 1268 (2001). As in the Massachusetts case discussed above, the Hawaii court characterized the due process failure as procedural. We consider it to be substantive for the same reasons given concerning the Massachusetts case.

Subsequent to the publication of the Bani decision, the Hawaii legislature amended the section of its sex offender registration and notification statute that provided "[a]ccess to registration information" to include a hearing that provided a sex offender with the opportunity to present evidence to show that "the offender does not represent a threat to the community and that public release of relevant information is not necessary." State v. Guidry, 105 Hawai'i 222, 96 P.3d 242, 244 (2004) (quoting former Haw. Rev. Stat. § 846E-3(d) (Supp. 2003)).

Bani , 36 P.3d at 1267 (emphasis in original).

See Millard v. Rankin , 265 F. Supp. 3d 1211, 1232-33, 1235 (D. Colo. 2017) (holding that Colorado act imposes cruel and unusual punishment and denies procedural and substantive due process to plaintiffs who do not pose material risk of recidivism).

Ch. 41, § 1, SLA 1994. See supra Part IV(C)(5).

Alternatively, he may proceed by amending the complaint in the current proceeding.

We note that the Supreme Court of New Hampshire recently imposed a similar hearing requirement to save that state's act from unconstitutionality as applied to an ex post facto claim. See Doe v. State , 167 N.H. 382, 111 A.3d 1077, 1102 (2015).

See Nichols v. Eckert , 504 P.2d 1359, 1362-63 (Alaska 1973). In this case non-tenured teachers were dismissed in the middle of the school year. Id . at 1360. The relevant statute did not provide for a hearing. Noting "[t]he stigma which attaches to a discharge for incompetence," we held that constitutional due process requirements necessitated a hearing, even though non-tenured teachers were not entitled to one by statute. Id . at 1364 ; see also Frontier Saloon Inc. v. Alcoholic Beverage Control Bd. , 524 P.2d 657, 661 (Alaska 1974) (holding that although a statute did not require a hearing before the suspension of a liquor license, a hearing was required by due process).

K & L Distribs., Inc. v. Murkowski , 486 P.2d 351, 354 (Alaska 1971). In this case we held that a competitor was entitled to judicial review of a tax exemption decision made by the Commissioner of Economic Development even though the applicable statute provided that the Commissioner's decision was final and not subject to judicial review:
It is the constitutionally vested duty of this court to assure that administrative action complies with the laws of Alaska. We would not be able to carry out this duty to protect the citizens of this state in the exercise of their rights if we were unable to review the actions of administrative agencies simply because the legislature chose to exempt their decisions from judicial review. The legislative statement of finality is one which we will honor to the extent that it accords with constitutional guarantees. But if the administrative action is questioned as violating, for example, the due process clause, we will not hesitate to review the propriety of the action to the extent that constitutional standards may require.
Id . at 357.

The legislature may find it appropriate to amend ASORA in order to prescribe conditions under which relief from registration may be granted.

See Wayne A. Logan, Database Infamia: Exit from the Sex Offender Registries , 2015 Wis. L. Rev. 219, 227 (2015).

As already noted, the Supreme Court of New Hampshire imposed an individualized risk assessment hearing requirement to save New Hampshire's registration act from unconstitutionality on ex post facto grounds. Doe , 111 A.3d at 1102 ; see supra note 130. After that decision, the New Hampshire legislature amended the act to define the circumstances under which a court could relieve an offender from the duty to register. These include circumstances where the offender "(1) 'has not been convicted of any subsequent offense requiring registration'; (2) 'has successfully completed any period of supervised release, probation, or parole'; (3) 'has successfully completed an appropriate sex offender treatment program'; and (4) 'has demonstrated that he or she is no longer a danger to the public and no longer poses a risk sufficient to justify continued registration.' " See White v. State , 171 N.H. 326, 195 A.3d 108, 109-10 (2018) (quoting N.H. Rev. Stat. Ann. § 651-B:6, V(c)). We stress that this is simply one of any number of potential models that may provide guidance to the superior court after briefing and argument.

See Mary K. Huffman, Moral Panic and the Politics of Fear: The Dubious Logic Underlying Sex Offender Registration Statutes and Proposals for Restoring Measures of Judicial Discretion to Sex Offender Management , 4 Va. J. Crim. L. 241, 269-74 (2016).

"Static factors represent historical information not subject to change, such as prior criminal record, previous violations of community supervision, and age at first offense." Id . at 271.

"Dynamic factors present as 'those characteristics, circumstances, and attitudes that can change throughout one's life.' Changeable variables include substance abuse, attitude, maturity, social support, and self-management practices." Id. (quoting Ctr. for Sex Offender Mgmt., Recidivism of Sex Offenders 5 (May 2001), https://www.csom.org/pubs/recidsexof.pdf).

Op. at 127-28 nn. 89-93.

AS 12.55.125(i)(1)(A)(ii).

AS 12.55.125(q).

Hudson v. Palmer , 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (stating that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell"); McGinnis v. Stevens , 543 P.2d 1221, 1237-38 (Alaska 1975) (concluding that prison inmates have no reasonable expectation of marital privacy subsuming conjugal visitation).

Sprague v. State , 590 P.2d 410, 417 (Alaska 1979) (citing Roman v. State , 570 P.2d 1235, 1242-43 (Alaska 1977) ).

See People v. Jeha , 187 Cal.App.4th 1063, 114 Cal. Rptr. 3d 711, 718 (2010) ("By their commissions of a crime and subsequent convictions, persons such as appellant have forfeited any legitimate expectation of privacy in their identities."); State v. Brooks , 367 Mont. 59, 289 P.3d 105, 108 (2012) ("As a result of Brooks' conviction of felony arson, he has a diminished privacy interest in the personal information required at his registration."); State v. Bowditch , 364 N.C. 335, 700 S.E.2d 1, 11 (2010) ("[I]t is beyond dispute that convicted felons do not enjoy the same measure of constitutional protections, including the expectation of privacy under the Fourth Amendment, as do citizens who have not been convicted of a felony."); Commonwealth v. Howe , 842 A.2d 436, 446-47 (Pa. Super. 2004) ("[P]ersons found to have committed [sex offenses] have a reduced expectation of privacy because of the public's interest in public safety and the effective operation of government.").

See Patterson v. State , 985 P.2d 1007, 1016 (Alaska App. 1999) ("The biographical information about a sex offender that the public can access under ASORA is information that is in large part already in the public domain."), overruled on other grounds by Doe v. State, Dep't of Pub. Safety , 92 P.3d 398 (Alaska 2004) ; People v. Cornelius , 213 Ill.2d 178, 290 Ill.Dec. 237, 821 N.E.2d 288, 300 (2004) ("Defendant engaged in conduct that lowered the privacy bar as his acts spawned a criminal prosecution culminating in a public record that contains the challenged information." (alterations omitted)).

State v. Druktenis , 135 N.M. 223, 86 P.3d 1050, 1078 (App. 2004) ("One convicted of a heinous sex offense starts a quest for constitutional protection from a much different and clearly less favorable position than those who to date have obtained privacy protection in the United States Supreme Court.").

See, e.g. , Ala. Code § 15-20A-2(5) (2018) ("Sex offenders, due to the nature of their offenses, have a reduced expectation of privacy."); La. Stat. Ann. § 15:540(A) (2018) ("Persons found to have committed a sex offense or a crime against a victim who is a minor have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government."); Miss. Code. Ann. § 45-33-21 (2018) ("Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government."); Ohio Rev. Code Ann. § 2950.02(5) (2019) ("A person who is found to be a sex offender or a child-victim offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government."); W. Va. Code Ann. § 15-12-1a(c) (2018) ("The Legislature also finds and declares that persons required to register as sex offenders pursuant to this article have a reduced expectation of privacy because of the state's interest in public safety.").

Alaska Const. art. I, § 12.

State v. Ranstead , 421 P.3d 15, 20 (Alaska 2018) ; see also Forster v. State , 236 P.3d 1157, 1174 (Alaska App. 2010).

Ch. 41, § 1(3), SLA 1994.

See, e.g. , Doe v. Cuomo , 755 F.3d 105, 114 (2nd Cir. 2014) ("Given the combination of the nature of the information released ... and the State's strong interest in releasing it, Doe has not supported a claim for the violation of any constitutional right to privacy. Nor, as already discussed, is there any real question that [the registration statute's] requirements are rationally related to the aim of protecting public safety." (internal citation omitted)); cf. Doe v. Dep't of Pub. Safety & Corr. Servs. , 185 Md.App. 625, 971 A.2d 975, 985 (2009) ("[T]he legislature's decision to use a prior conviction as the sole basis for deciding whether someone must be included in the registry, regardless of whether there is any specific evidence of sexual dangerousness, is not irrational.").

Op. at 135.

Op. at 135-36.

Egan v. Hammond , 502 P.2d 856, 871 (Alaska 1972) (quoting Champlin Refining Co. v. Corp. Comm'n , 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1932) ); see also Alaskans for a Common Language, Inc. v. Kritz , 170 P.3d 183, 196 n.54 (Alaska 2007) ("If a statute is susceptible of no reasonable construction avoiding constitutional problems, this court is under a duty to nullify the statute or, if possible, the particular provision found offensive to the constitution.").